MARY PAULA COOLEY *v.* TIMOTHY COOLEY
(10445)

DALY, FOTI and LANDAU, Js.

Argued March 22—decision released July 20, 1993

*Joel M. Ellis,* with whom was *Catherine P. Klinger-man,* for the appellant-appellee (plaintiff).

*Robert B. Hempstead,* for the appellee-appellant (defendant).

FOTI, J. This is an appeal from a judgment rendered in a dissolution of marriage action. The plaintiff withdrew her complaint after the defendant filed a cross complaint. She now appeals, claiming that the trial court improperly (1) excluded her from a share in a trust, (2) ordered nonmodifiable, time limited periodic alimony, and (3) ordered financial awards. The defendant has cross appealed, claiming that the trial court improperly (1) assigned the principal of a trust and (2) apportioned personal property. We reverse the trial court's judgment in part.

The parties were married on September 13, 1972, in Hartford. At the time of the dissolution, they had one minor child, a daughter born March 19, 1975. The prior marriage of each party ended in divorce. The defendant has three adult sons from his first marriage, which ended in 1972; he pays $7800 annually in alimony to his former spouse. Beginning in 1974, the defendant's three sons changed their residence from that of their mother to that of the parties for respective periods of three, five and two years. The plaintiff took an active role in raising the defendant's sons.

The defendant graduated from Yale, and from Wharton School of Finance with a masters degree in business administration. The parties met when they were both employed at the same stock brokerage firm and eventually developed a relationship that led to mar-

riage. The defendant later worked for another stock brokerage firm, until he became a bank trust officer and vice president for investments. In August 1982, with the plaintiff's support, the defendant began working as a chartered financial analyst. When he left the bank he earned about $39,000; during the next few years his salary was about $20,000 to $25,000. He has had significant trust income to cushion the income loss. Since 1986, the defendant has been employed as an independent contractor-salesperson for an investment advisory firm. He is paid on a commission basis, but has had expectations of an equity position with this firm.

The plaintiff stopped working in 1974 when she became pregnant. She organized a local chapter of The Samaritans, Inc., in 1985. In 1988, she received a masters degree in pastoral ministry from St. Joseph College and began work as a part-time assistant photographer, earning $100 a week. She has been employed as a personal financial planner since August, 1989, and is now an independent contractor-salesperson, earning commissions for financial planning and selling various financial products. She expects her income to reach $20,000 in a few years when she has built a client base, and thereafter to reach between $30,000 and $40,000.

During his first marriage, the defendant had a drinking problem. His alcoholism also surfaced in this marriage about 1975 and became a significant factor that eventually doomed the relationship. Although he was a functioning alcoholic who maintained employment, the defendant's illness transformed him into a distant family figure. After a confrontation with his children and the plaintiff in December, 1981, the defendant stopped drinking and joined Alcoholics Anonymous (AA) in June, 1982. He believes that during his alcoholic period the plaintiff assumed a dominant role in the mar-

ital and parental relationship and was unable to accept him as an equal partner when he became a recovered alcoholic in 1982.

The parties could not agree on therapists, or Al-Anon, or about the defendant's alcoholism. The defendant initially went to AA five nights a week. He later reduced the number of sessions, but could spend up to four nights a week at AA, which meant he was out of the house for up to fifty-eight hours a week. The loss of family time became a problem for the parties. By 1985, the marriage was in difficulty; divorce proceedings were initiated in 1988. In November, 1990, the trial court rendered a judgment dissolving the marriage and entered financial orders.

## I

### THE APPEAL

### A

The plaintiff first claims that the trial court improperly excluded her from sharing in a trust. The defendant's deceased mother set up two trusts in August, 1975, referred to as the "Timothy Trust" and the "Paula Trust." The trustee of each is an independent bank and both are spendthrift trusts. See General Statutes § 52-321.[1] The plaintiff's claim relates to the Paula Trust. (Paula is the plaintiff.)

---

[1] General Statutes § 52-321 provides: "Except as provided in sections 52-321a and 52-352b:

"(a) If property has been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold the income, and the income has not been expressly given for the support of the beneficiary or his family, the income shall be liable in equity to the claims of all creditors of the beneficiary.

"(b) Any creditor of the beneficiary who has secured a judgment against the beneficiary may bring an action against him and serve the trustees with garnishee process, and the court to which the action is returnable may direct

The Paula Trust was funded in 1975. At that time, the defendant's mother gifted equal amounts to her four sons. The defendant's allocation was placed in the Paula Trust. Between the time that the trust was funded and April, 1990, its appreciation was $667,848.

During the "initial period" of the Paula Trust, the trust provides that the trustee in its discretion can pay out the annual net income and principal for the care, maintenance and support of the plaintiff as long as she remains married to the defendant. Subject to the plaintiff's needs, the trustee in its discretion can pay out any remaining income and principal for the maintenance, support and education of the defendant's children (his three sons and the parties' daughter).[2] In the

the trustees to pay over the net income derived from the trust estate to the judgment creditor, as the income may accrue, until the creditor's debt is satisfied.

"(c) The court having jurisdiction over the fund may make such an order for payment pursuant to subsection (b) when the beneficiary is a nonresident of this state, as well as when the beneficiary is a resident, but in the case of a nonresident beneficiary notice shall be given to the nonresident of the action against him as provided in section 52-87. The nonresidence of the beneficiary shall not deprive the court of authority to make such an order.

"(d) If any such trust has been expressly provided to be for the support of the beneficiary or his family, a court of equity having jurisdiction may make such order regarding the surplus, if any, not required for the support of the beneficiary or his family, as justice and equity may require.

"(e) The defendant trustee in any such action shall be entitled to charge in the administration account of the trust such expenses and disbursements as the court to which the action is brought determines to be reasonable and proper."

[2] We note with concern that the trial court did not appoint counsel for the parties' daughter, who did not reach majority until March 19, 1993; General Statutes § 46b-54 (b); the interests of the minor child and those of the defendant's three sons were unrepresented throughout this action even though, as secondary beneficiaries under both the Paula Trust and the Timothy Trust, their interests may have been adverse to those of the parties.

We also find troubling the absence of the trustee, Connecticut National Bank, which owes a fiduciary duty to all of the persons whose interests

event the marriage terminates, the trustee in its discretion can pay out the annual income and principal solely for the defendant's children, though not necessarily equally.

During the initial period, the trust instrument confers on the defendant a limited power to appoint, during his lifetime or by his will, all or any part of the trust principal for the benefit of the plaintiff or his three brothers or any of them.

The trust instrument expressly provides that no interest in the trust, while in the possession of the trustee, shall be subject to the debts, contracts, liabilities, engagements or torts of any beneficiary. The Paula Trust is still in its initial period.

The trial court refused to order that the plaintiff share in the appreciation of the Paula Trust. The court found that, under article eleventh of the trust instrument,[3] she ceased to be a beneficiary upon the filing of this dissolution action, and, therefore, the defendant's limited power to appoint to her had ceased.

The plaintiff disagrees. She recognizes that, pursuant to article first, § (a), during the initial period the trustee may pay her income and principal only "so long as she shall be married to said Timothy Cooley." She contends, however, that because the initial period of the trust has not terminated, the defendant still has a limited power to appoint to her. She points out that under article second of the Paula Trust, the "initial period" terminates

---

may be affected by the financial orders in this dissolution action. We recognize, however, that because of our disposition of this appeal the trustee may no longer be a necessary party.

[3] Article eleventh provides in pertinent part: "DEFINITION OF TERMS . . . For purposes of this Indenture, the initiation of any legal proceeding by either said Timothy Cooley or said Paula D. Cooley for either a divorce or a legal separation shall constitute the termination of their marriage and the status of said Paula D. Cooley as a beneficiary hereunder shall terminate upon the filing of such papers."

only upon one of five occurrences, none of which, undisputedly, has happened.[4] She also points out that article first, § (b), provides that "[a]nything herein to the contrary notwithstanding" the defendant may appoint, during his lifetime or by will, all or any part of the trust principal to her or his brothers, or any of them, but not to himself. The plaintiff argues that by this language, the defendant may exercise his power to appoint to her at *any time* during his life or by his will, even *after* the marriage terminates, as long as the "initial period" of the trust has not ceased. She claims that the trial court improperly concluded that, pursuant to article eleventh, she ceased to be both an income beneficiary and a beneficiary of the defendant's power of appointment upon her filing of a dissolution action.

We agree with the plaintiff that, under the terms of the trust, termination of the parties' marriage appears

---

[4] Article second provides:

"TERMINATION OF INITIAL PERIOD OF TRUST

"The initial period of the trust hereby created shall terminate upon the happening of whichever of the following events shall first occur:

"(a) The remarriage of Susan Cooley, the former wife of said Timothy Cooley.

"(b) The death of said Susan Cooley.

"(c) The death of said Timothy Cooley.

"(d) The termination of the marriage of said Paula D. Cooley to said Timothy Cooley if no issue of said Timothy Cooley shall then be living.

"(e) The death of the last survivor of the issue of said Timothy Cooley living at the time of execution of this Indenture if his marriage to said Paula D. Cooley shall previously have terminated.

"Upon such termination of the initial period of the trust, the Trustee shall set out any balance of the Trust Estate not appointed by an effective exercise of the power of appointment contained in Paragraph FIRST (b) hereof, as it is then constituted, under Paragraph THIRD hereof if said Timothy Cooley shall then be living, or if he is not then living, the Trustee shall set out the same under Paragraph FOURTH hereof if said Paula D. Cooley shall then be living and unremarried, and shall have been married to him at the time of his death. If said Paula D. Cooley is not then living and unremarried, or if she was not married to said Timothy Cooley at the time of his death, the Trustee shall set out the Trust Estate under Paragraph FIFTH hereof."

not to have affected her position as a possible appointee. We disagree, however, with her contention that the court improperly excluded her from a share in the trust corpus.

"The issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent." *Heffernan* v. *Freedman,* 177 Conn. 476, 481, 418 A.2d 895 (1979). The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable. See *Connecticut National Bank & Trust Co.* v. *Chadwick,* 217 Conn. 260, 266, 385 A.2d 1189 (1991). Since the issue presented concerns the court's legal conclusion regarding intent of the settlor as expressed solely in the language of the trust she created, we must decide that issue by determining de novo whether that language supports the court's conclusion. See *Canaan National Bank* v. *Peters,* 217 Conn. 330, 335, 586 A.2d 562 (1991).

"[W]e cannot rewrite . . . a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the . . . settlor when the instrument was executed, including the condition of [her] estate, [her] relations to [her] family and beneficiaries, and their situation and condition. 'The construing court will put itself as far as possible in the position of the . . . [settlor], in the effort to construe . . . [any] uncertain language used by [her] in such a way as shall, conformably to the language, give force and effect to [her] intention.' . . . But '[t]he quest is to determine the meaning of what the . . . [settlor] said and not to speculate upon what [she] meant to say.' " (Citations omitted.) *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 278–79, 170 A.2d 130 (1961).

In its articulation, the trial court properly concluded that article eleventh terminates the plaintiff's status as an income beneficiary of the trust upon the filing of divorce papers. The court determined that an inconsistent result would be possible if it found that even after a divorce the plaintiff remained an appointee under the defendant's limited power of appointment, with access to the trust corpus. The trial court found this interpretation would be contrary to a harmonious reading of all sections of the trust. The court discerned that the settlor was concerned with the impact of divorce on her proposed gift to her son, and that she desired to protect and preserve the trust from financial claims arising from a dissolution. These intentions are strongly evidenced by the great lengths to which the settlor went to protect the trust assets from claims by the defendant's first wife, Susan Cooley. The trust instrument also evinces an intent by the settlor to limit the distribution of the trust principal to a very narrow group of persons. Under article sixth, § (c), for instance, in the event that any legal action to enforce a claim against the defendant by his first wife results in a determination that any part of the trust estate may be taken to satisfy such claim, the trustee is directed to terminate the trust as to that part and pay the portion to the defendant's brothers, the settlor's other sons; the plaintiff was not to be a recipient under this provision. Also significant is that the trust's initial period does not end upon the termination of the parties' marriage "with issue living." Under that circumstance, the defendant himself still has no access to trust assets for his own benefit, again evincing the settlor's intent to shield the assets from the effects of a dissolution judgment. The trust instrument, read as a whole, strongly suggests an intent on the part of the settlor that the plaintiff's status as a recipient under the trust would change upon termination of the marriage.

Nevertheless, the phrase "anything herein to the contrary notwithstanding" contained in article first, § (b), appears to preserve the defendant's power to appoint to the plaintiff even after her filing of divorce papers. While this phrase injects uncertainty into the trust instrument, we need not resolve that uncertainty. We conclude that, even if the language of the trust were crystal clear as to the settlor's intent that the plaintiff maintain her status as an appointee even after termination of the marriage, the trial court's decision not to award her a portion of the Paula Trust was proper.

General Statutes § 46b-81 gives the trial court the power in a dissolution action to "assign to either the husband or wife all or any part of the estate of the other." A limited power of appointment is not a part of the marital estate that can be awarded in a dissolution action, however.

"A power of appointment is a power of disposition given to a person over property not his own by some one who directs the mode in which that power shall be exercised by a particular instrument. . . . The donor does not vest in the donee of the power title to the property, but simply vests in the donee power to appoint the one to take the title. The appointee under the power takes title from the donor, and not from the donee of the power. . . . The ultimate beneficiary really takes from the person who created the power, the donee of the power acting as a mere conduit of the former's bounty." (Citations omitted; internal quotation marks omitted.) *Linahan* v. *Linahan,* 131 Conn. 307, 324, 39 A.2d 895 (1944).

Under the terms of the Paula Trust, the defendant was the donee of only a limited or nongeneral power of appointment. "(1) A power of appointment is general if it is exercisable in favor of any one or more of the following: the donee of the power, the donee's cred-

itors, the donee's estate, or the creditors of the donee's estate. (2) Any other power of appointment is a non-general one." 2 Restatement (Second), Property § 11.4 "Donative Transfers" (1986). "As a matter of both common law doctrine and the practicalities of the situation, the donee of a nongeneral power is not the owner of the appointive assets. The donee is in a fiduciary position with reference to the power and cannot derive personal benefit from its exercise. The donee's creditors have no more claim to the appointive assets than to property which the donee holds in trust. It is immaterial whether or not the donee exercises the power." Id., § 13.1, comment (a). The situation differs where the donee possesses a general power of appointment. "Where . . . a general power has been created, the donee is substantially in the position of an owner." Id. Because the defendant, having only a limited power of appointment, has no interest, beneficial or otherwise, in the appointive assets of the Paula Trust, no portion of those assets may be included in the marital estate.

Nor can the appointive assets be included in the marital estate by virtue of the plaintiff's status as the object of the power of appointment given to the defendant. "An object of a power of appointment has an interest analogous to a contingent future interest in the property subject to the power . . . ." Id., § 11.2, comment (d). As one of the possible objects of the defendant's power, the plaintiff possesses no more than a mere expectancy; her receipt of principal from the trust is wholly contingent upon the defendant's exercising his discretion to appoint to her. Even if the marriage had continued, the plaintiff's expectancy might never have been realized if, for example, the defendant had elected to appoint the entire corpus of the Paula Trust to one of his brothers. The plaintiff had no vested right at any

time to the trust corpus that would permit its inclusion in the marital estate. See *Rubin* v. *Rubin,* 204 Conn. 224, 231, 527 A.2d 1184 (1987) (future property that is a "mere expectancy" is not subject to division in a divorce action).

Finally, because a limited power of appointment such as the defendant's is not, itself, an asset of the donee; *Supreme Colony* v. *Towne,* 87 Conn. 644, 648, 89 A. 264 (1914); it may be neither assigned nor delegated. The trial court properly refused to order the defendant to exercise his limited power of appointment and properly concluded that the plaintiff was not entitled a share of the Paula Trust.

## B

The plaintiff next claims that the trial court's award of nonmodifiable, time limited periodic alimony was clearly erroneous.[5]

"The issue of time limited alimony has been considered by this court in a number of cases. See *Watson* v. *Watson,* 20 Conn. App. 551, 568 A.2d 1044 (1990); *Sunbury* v. *Sunbury,* [13 Conn. App. 651, 538 A.2d 1082 (1988)]; *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); *Louney* v. *Louney,* 13 Conn. App. 270, 535 A.2d 1318 (1988); *Markarian* v. *Markarian,* 2 Conn. App. 14, 475 A.2d 337 (1984). In each of these cases, we stated that one purpose of limiting the duration of an alimony award is to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency. See *Markarian* v. *Markarian,* supra, 16.

---

[5] As part of the court's award, the plaintiff received a lump sum payment of over $100,000 as well as the marital residence valued at $225,000 subject to a mortgage of approximately $30,000. She was awarded alimony of $45,000 payable over four years, ending December 7, 1994, plus two additional years at $1 per year.

"In these cases, we reviewed whether there was sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. *O'Neill* v. *O'Neill,* supra." *Henin* v. *Henin,* 26 Conn. App. 386, 391–92, 601 A.2d 555 (1992).

The trial court must consider all of its financial orders as a cohesive unit. *Brash* v. *Brash,* 20 Conn. App. 609, 614, 509 A.2d 44 (1990). The trial court need not make a detailed finding justifying its award of time limited alimony, but the record must indicate the basis for that award, and there must be sufficient evidence supporting the award for the particular duration established. *Mathis* v. *Mathis,* 30 Conn. App. 292, 293, 620 A.2d 174 (1993); *Ippolito* v. *Ippolito,* 28 Conn. App. 745, 751–52, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992).

Our review of the record in this case indicates that the trial court considered a number of the criteria set out in General Statutes § 46b-82 in exercising its discretion to award time limited alimony, including the length of the marriage, the causes of the dissolution, the age, health, station, occupation, amount and sources of income, along with the vocational skills, employability, estate and needs of the parties. We recognize that the trial court did not explicitly address each criteria. The court has great discretion in domestic relations cases; *Savage* v. *Savage,* 25 Conn. App. 693, 695, 596 A.2d 23 (1991); and a reviewing court will give great weight to the financial awards because of the trial court's opportunity to observe the parties and the evidence. *Holley* v. *Holley,* 194 Conn. 25, 29, 478 A.2d 1000 (1984). While the trial court did not specifically address rehabilitative alimony, the record supports the court's conclusion that the plaintiff is not in need of

training or further education in order to obtain the skills necessary to attain self-sufficiency. See *Wolfburg* v. *Wolfburg,* 27 Conn. App. 396, 400, 606 A.2d 48 (1992). "Although time limited alimony awards are essentially rehabilitative in purpose, there may be other valid reasons for awarding such alimony." *Roach* v. *Roach,* 20 Conn. App. 500, 506, 568 A.2d 1037 (1990). "The particular length of time needed for alimony can sometimes be established by predicting when future earnings, based on earning capacity as known at the time of the dissolution, will be sufficient for self-sufficency." *Wolfburg* v. *Wolfburg,* supra.

The evidence in the record as to the plaintiff's education, ability and vocational skills, and the absence of any evidence of physical or mental restrictions, reasonably lead to a conclusion that she will resume a successful business career in a relatively short period of time. We conclude that neither placing a time limit on the alimony nor ordering that its duration be nonmodifiable was logically inconsistent with these factors.

## C

The plaintiff's final claim is that the trial court improperly awarded the lump sum and periodic alimony and the division of property.

As a reviewing court, we are limited to determining whether the trial court abused its discretion in making financial awards. *Barnes* v. *Barnes,* 190 Conn. 491, 494–95, 460 A.2d 1302 (1983). To conclude that the trial court abused its discretion, we must first find that the court either incorrectly applied the law or could not reasonably have concluded as it did. *Wolfburg* v. *Wolfburg,* supra, 398. Here, the court made clear that it intended to set a greater share of the marital estate to the plaintiff than to the defendant and that one of the difficulties in this matter was to produce an equitable dissolution judgment in a deteriorating financial mar-

ket. We have reviewed the record and the evidence in this case and conclude that the financial awards are within the parameters of the trial court's broad discretion and made in accordance with the law and the evidence.

## II

### THE DEFENDANT'S CROSS APPEAL

### A

The defendant first claims that the trial court improperly ordered him to exercise his limited power of appointment to appoint to the plaintiff one half of the appreciation of the Timothy Trust. We agree with the defendant.

At the time the defendant's mother set up the Paula Trust in 1975, she also set up another trust. That trust was funded in 1985 after the defendant's mother died. The trust property was divided into four equal portions for the defendant and his three brothers; the defendant's portion is referred to as the Timothy Trust.

Article third, § (a), of the Timothy Trust provides that the trustee, in its discretion, can pay out so much of the annual net income and principal as the trustee deems advisable for the defendant's care, maintenance and support. Thereafter, the trustee can distribute to the defendant's four children, not necessarily equally, so much of the balance of the income and principal as the trustee deems advisable for their maintenance, support and education. Article third, § (b), provides that the defendant in his sole discretion may appoint all or any part of the principal of the Timothy Trust, "in trust or otherwise, to or for the benefit of any person, persons or charitable organizations, or any of them, except himself, his estate, his creditors or the creditors of his estate." If, at death, the defendant has not exercised

this limited power as to all of the principal of the trust, the balance will be divided equally among his four children.

The trial court determined that because the Timothy Trust did not exclude the plaintiff as a possible beneficiary of the power of appointment and the plaintiff is not a creditor, she should share in the appreciation of the trust principal. As ordered, this would give the plaintiff 50 percent of the difference between the trust's funding value of $237,826 and its market value at the close of business on December 1, 1990, the accounting date nearest to the date of judgment. For nearly the same reasons that we concluded that the plaintiff is not entitled to a share in the Paula Trust, we conclude that she is not entitled to a share in the Timothy Trust.

As we noted earlier in this opinion, a limited power of appointment such as the defendant's is not an asset of the defendant that can be assigned or transferred. *Supreme Colony* v. *Towne,* supra, 648–49. The power does not confer on the defendant any title to or interest in the appointive property. *Bankers Trust Co.* v. *Variell,* 143 Conn. 524, 528, 123 A.2d 874 (1956). Unlike a general power, which in some contexts is deemed to be the equivalent of ownership over the appointive assets, a limited power confers on the donee none of the beneficial enjoyment of the property. Nor does the plaintiff have more than a mere expectancy in the trust property. *Rubin* v. *Rubin,* supra.

The plaintiff recommends that we cast aside the common law principle that appointive property is not an asset of the donee and that we recognize an equitable power in the trial court to reach the appointive assets and include them in the marital estate. She urges us to employ "a common sense notion that such powers over wealth should be deemed the equivalent of property subject to a court's control in a dissolution pro-

ceeding.'' The plaintiff relies on a doctrine applicable to general powers, "that property of a third person, not owned by a [donee] but over which he had and has exercised a general power of appointment, is deemed in equity to be charged with the payment of the debts of the donee to the extent that his own estate is insufficient to satisfy them . . . . and while doubts have often been expressed as to the soundness of the reasons underlying [this doctrine] and the logical difficulties involved have been noted, it has been generally adopted and applied in appropriate cases. . . . The doctrine is purely one of equity. 'On no theory of hard fact is the property appointed the property of the donee of the power. But very early equity grafted onto these bald facts a principle of fair dealing. That principle was founded on the idea that a man ought to pay his debts if he could. Equity assumed as a matter of good conscience and sound morals that a man in debt could not honestly have meant to give property to his friends or relatives to the exclusion of his creditors, when he could give it to anybody he chose. . . . This is another of numerous illustrations of the application by courts of "fundamental ethical rules of right and wrong" to the complicated affairs of mankind.' '' *State ex rel. Beardsley* v. *London & Lancashire Indemnity Co.*, 124 Conn. 416, 427–28, 200 A. 567 (1938). In keeping with this principle, the plaintiff also urges us to treat the assets subject to the defendant's limited power of appointment as they might be treated under the transfer and succession tax laws if they were subject to a general power of appointment in the defendant. By this analysis, she contends, the appointive assets would be includable in the marital estate and would be subject to distribution by the trial court.

The plaintiff's position has an obvious flaw: While this equitable principle may apply to general powers of appointment, the power possessed by the defendant

under the Timothy Trust was only a limited power. Although the plaintiff acknowledges this important distinction, she urges us to ignore it. We decline to do so.

We earlier underscored the important difference between a general and a limited or nongeneral power of appointment. Again we point out that the nature of this power is such that the defendant, himself, can derive no personal benefit from its exercise. While it is certainly possible, as the plaintiff proposes, that the defendant can indirectly benefit from the power by appointing to persons—his brothers, for instance—who might turn the money back over to the him, we cannot and will not base our decision on such speculation. The trust instrument specifically provides that the power may not be exercised for the benefit of the defendant himself, his estate, his creditors, or the creditors of his estate. Financial awards made in a dissolution proceeding are, by their very nature, a benefit to one party and an obligation to another.

Moreover, while the class of appointees under the Timothy Trust is broader than that under the Paula Trust, the trust instrument expressly excludes creditors from the class of appointees. Contrary to the trial court's statement that the plaintiff is not a creditor, the judgment in this dissolution action established the plaintiff's status as that of a judgment creditor. See *Urrata* v. *Izzillo,* 1 Conn. App. 17, 18, 467 A.2d 943 (1983) (former spouse is a judgment creditor pursuant to a judgment for alimony and child support); see also *McAnerney* v. *McAnerney,* 165 Conn. 277, 287, 334 A.2d 437 (1973); 2 Restatement (Second), Property § 13.7 "Donative Transfers," (1986) Reporter's note 4 (as a result of divorce, spousal claims established in divorce proceedings entitle spouse to same rights against appointive assets as would be available to a creditor). The plaintiff is thus no longer a permissible appointee.

We therefore conclude that the trial court improperly ordered the defendant to exercise his limited power of appointment under the Timothy Trust in favor of the plaintiff.[6]

### B

The defendant next claims that the trial court abused its discretion in apportioning personal property between the parties. Specifically, he claims that the court failed to consider written proposals submitted by the parties and incorrectly applied the criteria ordinarily relevant to apportionment.

Because our resolution of the defendant's first claim requires that we remand the case to the trial court for a reconsideration of all the financial orders; *Sunbury v. Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989); we need not address this issue.

The judgment is reversed as to the financial orders and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[6] The defendant also, as part of this claim on his cross appeal, alleges that the trial court incorrectly calculated the amount of the lump sum payment awarded to the plaintiff. Because of our disposition of the first issue on his cross complaint we find it unnecessary to address this.