[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 25, 2000, the court tried this limited contested dissolution matter. At the conclusion of the evidence, the court found that it had subject matter jurisdiction over the marriage and that the marriage had broken down irretrievably, and the court dissolved the marriage. There are no minor children issue of the marriage. The court deferred issuance of financial orders pending the filing of briefs by the parties. The court makes the following additional findings and orders.
In 1988 the plaintiff was a widow who had inherited from her late husband's estate a residence on St. Croix, a number of antiques and antique vehicles, a life interest in an apartment in Connecticut, and $5,000. A few months after her first husband's death, the parties, while living on St. Croix, formed a relationship and began residing together. On February 14, 1992, the parties married.
Before this marriage, the plaintiff was unaware that the defendant had been a heroin addict since 1973. He sustained long periods of abstinence between bouts of abuse. The plaintiff was aware that the defendant occasionally used other illicit substances recreationally, as did she. Once, while on St. Croix, the defendant was incarcerated for what he characterized to the plaintiff as a minor marijuana possession charge.
The parties eventually moved to Connecticut and resided in the defendant's apartment. At the time, he also owned a residence in Columbia, Connecticut, jointly with a former girlfriend. The plaintiff CT Page 9743 used her own funds to purchase that former girlfriend's interest in that residence for $4,000. The parties thereafter jointly owned the home. They borrowed $102,000 to extinguish an existing mortgage, which loan was secured by a new mortgage.
Sometime in 1989 or 1990, the plaintiff auctioned off her antiques for about $20,000. These proceeds were spent for the parties' mutual benefit. Before their marriage, the couple shared their household expenses equally. The plaintiff managed these expenditures using a credit card account which was solely in her name.
After they married, the defendant's contributions to the couple's support evaporated as his heroin abuse resurfaced. Despite earning from $30,000 to $70,000 per year from 1992 to 1997 as a sales representatives the defendant gave little financially to the marriage. In 1992, the plaintiff sold the St. Croix residence for $120,000. She spent $40,000 of this sum to pay off household debts and purchase a van for the defendant so that he might easily transport his organ to musical performances in which he engaged as a sideline. She invested the remaining $80,000 with Fidelity Investments to generate a nest egg for her retirement years. She was employed at that time as a travel agent but derived no retirement or health care benefits from her employment.
Unfortunately, by the end of 1992, the plaintiff was unable to make ends meet with her income plus the infrequent and minor contributions of the defendant. Increasingly, she withdrew from her retirement investment to pay the family bills until, by late 1996, she had depleted that account. She had also used $5,000 from this account to purchase the car she presently drives.
By this time, the defendant's heroin abuse was taking a toll on his health, and he has contracted hepatitis B and C. He was under the influence of the narcotic most of the time. He absented from the residence for long periods without explanation. He lied to the plaintiff about his whereabouts, the extent of his drug abuse, and other drug-related matters. He began stealing money from the plaintiff's purse and her checkbook, and forged the amounts of the checks that she had actually given to him. He was arrested for shoplifting and again on a narcotic violation in Hartford. A parade of strangers would frequent the parties' residence at odd hours causing the plaintiff to fear for her safety.
Repeated urging by the plaintiff for the defendant to obtain professional assistance to combat his addiction fell on deadened ears. Eventually, the plaintiff consulted with the defendant's family about the gravity of the defendant's problem. With the concerted effort of his CT Page 9744 family and the plaintiff and the financial assistance provided by his father, the defendant entered a rehabilitation center in Florida. The defendant successfully completed a six month inpatient program and has refrained from substance abuse for the past two and one-half years.
The plaintiff stayed by the defendant because of her love, loyalty, and pity for him. While the defendant was in treatment, the plaintiff realized that her feelings for the defendant had waned. One week before his release from the center, she notified the defendant that she was leaving him. The defendant remained in Florida where he currently resides and shares an apartment with a roommate. The plaintiff now lives in Canterbury, Connecticut, where she shares a residence and living expenses with a companion.
In September 1998, the house in Columbia was sold for $102,000 garnering proceeds for the parties of $19,000. The plaintiff distributed from this sum $6,000 to $8,000 to the defendant, paid closing costs and debts to the defendant's family of about $3,000, and retained the remainder for herself. The plaintiff filed for bankruptcy, eventually.
The plaintiff is thirty-nine years old, a high school graduate with one and one-half years of college, and works as a travel agent earning thirteen dollars per hour. She had attempted to operate her own agency, but the business failed. Her present wage is commensurate with her earning capacity.
The defendant is forty-eight years old, a high school graduate with a technical degree in recording engineering. He is a gifted musician and a talented salesman. He presently earns six dollars an hour in a music store. He is attempting to obtain work as a musician. His earning capacity has been drastically diminished by his drug addiction. His recovery would be jeopardized if he were to resume the high tension world of sales. He must exercise great caution in his engagements in the community of musicians because of his affliction. He attends NA meetings daily and is very active in the NA organization. This activity assists his recovery and is essential to his continued abstinence. The court finds that his present earning capacity is also commensurate with his current wage.
The defendant also receives around $1,000 per month from a trust fund established for his benefit by his father. The corpus of the fund is now about $475,000. The defendant's father has added $20,000 per year, except one, since the creation of the trust in 1988. That exception was the year that his father paid for his rehabilitation treatment. The trust instrument provides that all of the income generated by the trust is distributed to the defendant and that when the defendant attains sixty CT Page 9745 years he receives the corpus free and clear. It further provides in subsection 2(c) that, if the defendant dies before sixty, the principal is paid to whomever the defendant specifically designates for such purpose under his will. In the absence of such a designation, the assets are added to the trust funds of other relatives.
It is undisputed that the cause of the irretrievable breakdown of the marriage is attributable solely to the defendant's heroin addiction and its manifestations. Until separation, the plaintiff was a loving and devoted wife who endured much of the emotional and financial fallout from the defendant's substance abuse. The defendant's failure to contribute regularly to the parties' expenses resulted in the depletion of the plaintiff's inheritance from her first husband and her retirement fund. Presently, the plaintiff is bereft of pension and savings. Any financial order must strive to redress this inequity caused by the defendant's drug-induced neglect.
Considering all of the evidence in the case in light of the factors set forth in General Statutes §§ 46b-81 and 46b-82, the court issues the following financial orders:
1. The parties have divided their tangible personal property previously, and each shall retain their present tangible personal possessions.
2. Each party shall be solely responsible for the liabilities which they have listed on their respective financial affidavits, which are incorporated herein by reference, and shall hold the other harmless thereon.
3. The defendant is ordered to pay to the plaintiff periodic alimony of one dollar per year until he reaches age sixty at which time he will pay the plaintiff periodic alimony of $500 per week. The court has awarded alimony in this fashion because it determines that the defendant's earning capacity will substantially increase as he continues to distance himself from his heroin abuse. Also, the defendant is the beneficiary of the income from an irrevocable trust fund and stands to receive around $500,000 upon attaining sixty years.
The court may properly consider the defendant's future interest in the corpus of a trust fund when fashioning a present financial order,Weinstein v. Weinstein, 18 Conn. App. 622, 634 (1989). Indeed, that future interest, if vested, is a martial asset, Dietter v. Dietter,54 Conn. App. 481, 500 (1999). That circumstance exists in the present case. The court may design a decree so as to allow for modification of alimony when a future interest matures, Eslami v. Eslami, 218 Conn. 801, CT Page 9746 807 (1991); Rubin v. Rubin, 204 Conn. 224, 233 (1987). That design is especially important in this case because the court is powerless to order a present property distribution of the trust fund corpus which he will receive in the future, Smith v. Smith, 249 Conn. 265, 275 (1999); Rubinv. Rubin, supra. 231.
The plaintiff has argued that the court ought to provide security for its financial orders by requiring the defendant to make a will in which he must appoint the plaintiff to receive all or a portion of the trust fund if he should die before age sixty in order to satisfy the trust agreement, subsection 2(c), (Defendant's Exhibit 2). This notion is appealing, but appears to be prohibited by the holding of Cooley v.Cooley, 32 Conn. App. 152, 163 (1993).
 ___________________ J. Sferrazza, J.