MICHELLE L. SPENCER *v.* EDGAR B. SPENCER III
(AC 21722)

Lavery, C. J., and Schaller and Mihalakos, Js.

Argued May 1—officially released August 6, 2002

*Walter A. Twachtman, Jr.*, for the appellant (plaintiff).

*Timothy J. Fitzgerald*, with whom, on the brief, was *J. Patrick Dwyer*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff, Michelle L. Spencer, appeals from the order of the trial court modifying the alimony and child support awards to be paid by the defendant, Edgar B. Spencer III. Each of the plaintiff's claims on appeal centers on whether the court improperly found that the loss of the defendant's employment formed a sufficient basis for modification of the support awards despite a trust fund in which the defendant was, at the time of the dissolution, and continues to be a beneficiary.[1] We affirm the order of the trial court.

---

[1] In her statement of the issues and in the argument portion of her brief, the plaintiff presents six claims as follows:

"1. Did the court err in granting the defendant's motion to modify the alimony and child support awarded to the plaintiff in the original judgment of this case, notwithstanding the fact that the defendant had lost his job when the defendant and the children of the marriage are the beneficiaries of trusts that have about $1 million in resources and when the defendant has the rent free use of a substantial house owned by the trust for which the trust pays real estate taxes, maintenance and insurance? . . .

"2. Did the court err in reducing the child support payable to the plaintiff when the evidence showed that the trusts which benefit the defendant and the children of the marriage, specifically allowed for payments of support for the children and where the defendant admitted that the trusts were set [up] to provide for payments for the support of the children and where the trusts had approximately $1 million in resources available for such payments? . . .

"3. Did the court err in finding that '[t]he income received from the

The following facts and procedural history are relevant to our consideration of the issues on appeal. On February 6, 1996, after a twenty-two year marriage, the plaintiff brought an action seeking dissolution of the marriage. The parties have three children. Colin and Martha were born on December 12, 1983, and Mallory was born on March 7, 1993. On May 14, 1998, the court, *Barall, J.*, rendered judgment dissolving the marriage and, by agreement of the parties, retained jurisdiction for a later determination of custody, alimony, child support, property disposition and fees.

In February, 1999, the court, *Bishop, J.*, heard evidence regarding the reserved issues and issued its memorandum of decision on March 23, 1999. The court awarded to the plaintiff the marital home located at 33 Hoskins Road in Bloomfield. The defendant had moved into his parents' former home on Duncaster Road, which also is in Bloomfield, after the parties separated in July, 1995. Recognizing that the parties resided fairly

[individual retirement account (IRA), which is the funding vehicle for the trusts] provides the corpus of the exempt and nonexempt trusts? From this corpus, the trusts themselves realize the income that is available to fulfill the stated purpose of the trust,' when the evidence showed that the trustee received distributions from the IRA and actually recorded it and used it as 'income' or 'principal' depending on what account needed the funds rather than on any legal categorizing of the distribution? . . .

"4. Did the court err in finding that a new trustee had, '[i]ndicated that there is insufficient income to continue the practice of paying the defendant $2500 per month,' without any evidence from the new trustee after the court specifically found that the facts show that the defendant received $2500 per month, and that such sum exceeds the income generated by the exempt trust? . . .

"5. Did the court err in not considering the defendant's rent free use of a house owned by the trust, for which the trust pays real estate taxes, maintenance and insurance, as an income factor to him which considerably raises his income and where his financial affidavit failed to show any credit for the benefit of the use of this house? . . .

"6. Do the spendthrift provisions insulate the defendant from the claims of the plaintiff where a spouse or former spouse is not a 'creditor' subject to spendthrift provisions?"

close to one another, the court awarded joint physical and joint legal custody of the children. After finding that the substantial amount of time the children were to be in the defendant's care warranted a deviation from the child support and arrearage guidelines, the court ordered the defendant to pay to the plaintiff $300 per week as child support for the three children and to purchase the children's clothing. In addition, the defendant was ordered to pay to the plaintiff $400 per week as alimony.

At the time of the dissolution hearing, the defendant was the president of Philbrook, Booth & Spencer, Inc. (Philbrook), a manufacturing firm that had been run by his family for many years, and earned a salary of $90,000 per year. The plaintiff was employed by Nadeau's Auction Gallery and was working eighteen hours a week for $9 an hour. The court found that the plaintiff held a bachelor of arts degree in art history and that she was underemployed.

In its memorandum of decision, the court also made certain findings pertaining to the trust. It found that the Margaret B. Spencer Irrevocable Trust was created for the benefit of the defendant and his sister. Furthermore, the court found that "the defendant is the beneficiary of an irrevocable trust which, in turn, is the beneficiary of an [individual retirement account] with a principal value of approximately one million, one hundred and fifty thousand ($1,150,000) dollars as of December 31, 1998." The children's educational expenses were paid by the trust, and the defendant received direct distributions from the trust totaling $24,500 in the prior two years.

On February 2, 2000, the defendant filed a motion for modification of the alimony and child support payments. In his motion, the defendant claimed that the failure of Philbrook and his subsequent unemployment justified a modification of the support orders. After

hearing evidence, the court, *Gruendel, J.*, granted the defendant's motion for modification. In its memorandum of decision filed November 1, 2000, the court ordered him to pay to the plaintiff $125 per week for child support and reduced alimony to $1 per year. The court found that the "value of the trust has not changed substantially since the date of the judgment." Since the date of dissolution, the trust paid to the defendant $2500 per month from its income, totaling $30,000 per year. The defendant testified that he was in the process of changing the trustee and that the income generated by the trust was less than $2500 per month. The court found that "there is no evidence as to [the defendant's] present earning capacity. The court finds, however, that it is not less than the sum of $30,000 he had been receiving as direct income from the trust."

On November 20, 2000, the plaintiff filed a motion for rehearing or reargument to which the defendant objected. Thereafter, the court granted the plaintiff's motion, but denied the relief requested. This appeal followed.

In essence, the plaintiff argues that there was no substantial change in circumstances to form a basis for modification of the support orders. The linchpin of her argument is the defendant's interest in the trust. She argues that because the trust is worth approximately $1 million, the defendant's loss of his $90,000 salary is insignificant and does not constitute a substantial change in circumstances. The plaintiff's arguments are misplaced for two reasons: (1) the defendant's interest in the trust vested prior to the dissolution and was taken into account by the dissolution court; and (2) the trust contains a spendthrift provision that gives the trustee the sole discretion as to what, if any, funds are distributed to the defendant.

We first set forth our standard of review and the legal principles that govern our analysis of the issues on

appeal. "A trial court is endowed with broad discretion in domestic relations cases. Our review of such decisions is confined to two questions: (1) whether the court correctly applied the law, and (2) whether it could reasonably have concluded as it did." (Internal quotation marks omitted.) *Denley* v. *Denley*, 38 Conn. App. 349, 351, 661 A.2d 628 (1995). "With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530, 752 A.2d 978 (1998).

"[U]nder our statutes and cases, modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree. . . . Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony. After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification . . . it also naturally comes into play in the trial court's structuring of the modification orders." *Borkowski* v. *Borkowski*, 228 Conn. 729, 737, 638 A.2d 1060 (1994); see also General Statutes § 46b-86.[2] In general, the same factors used by the court to establish an initial award of alimony are relevant in deciding whether the decree may be modified. *Borkowski* v. *Borkowski*, supra, 736; see also General Statutes § 46b-82.[3] The party seeking

[2] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

[3] General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and the amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of

modification must prove the existence of a substantial change in the circumstances. *Crowley* v. *Crowley*, 46 Conn. App. 87, 91, 699 A.2d 1029 (1997).

When determining whether there is a substantial change in circumstances, the court is limited in its consideration to conditions arising subsequent to the entry of the dissolution decree. *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 382, 731 A.2d 330 (1999). "To permit the trial court to reconsider all evidence dating from before the original divorce proceedings, in determining the adjustment of alimony, would be, in effect, to undermine the policy behind the well established rule of limiting proof of the substantial change of circumstances to events occurring subsequent to the latest alimony order—the avoidance of relitigating matters already settled." *Borkowski* v. *Borkowski*, supra, 228 Conn. 738.

As a preliminary matter, we note that the modification court found that the dissolution court had awarded the trust to the defendant as part of the property settlement. The modification court further noted that "[p]rofits from an asset received as part of a property settlement are not income for purposes of determining whether there has been a substantial change in circumstances. *Denley* v. *Denley*, [supra, 38 Conn. App. 353–54]." The dissolution court acknowledged the existence of the trust and the defendant's interest in the trust, but did not award the trust to the defendant at the time of dissolution. As we will discuss, the court could not award the trust as part of the property settlement and, therefore, *Denley* does not apply to the present case.

To address the plaintiff's claims, we must also set forth the legal principles governing trusts generally and

the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

specifically the construction of a trust instrument. "The issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent. . . . The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable." (Citation omitted; internal quotation marks omitted.) *Cooley* v. *Cooley*, 32 Conn. App. 152, 159, 628 A.2d 608, cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). "[W]e cannot rewrite . . . a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the . . . settlor when the instrument was executed, including the condition of [her] estate, [her] relations to [her] family and beneficiaries, and their situation and condition. The construing court will put itself as far as possible in the position of the . . . [settlor,] in the effort to construe . . . [any] uncertain language used by [her] in such a way as shall, conformably to the language, give force and effect to [her] intention. . . . But [t]he quest is to determine the meaning of what the . . . [settlor] said and not to speculate upon what [she] meant to say." (Internal quotation marks omitted.) Id.

On February 1, 1996, the defendant's mother created the Margaret B. Spencer Irrevocable Trust. During her life, Margaret Spencer was the sole beneficiary of the trust. The trust held certain real property, including the defendant's current home. The trust derives its income from an individual retirement account created for the benefit of Margaret Spencer pursuant to § 401 of the Internal Revenue Code and subject to the required minimum distributions prescribed by § 401 (a) (9). See 26 U.S.C. § 401.

After her death, the trust property was divided into two equal portions for the benefit of the defendant and his sister. We are concerned only with the defendant's share of the trust. Each portion was further divided into an exempt trust and a nonexempt trust to reduce the tax liability of the trust. Paragraph three of the trust instrument, which governs the exempt trust, states in relevant part: "(a) The Trustee shall pay to or for the benefit of the child, during his or her life, so much of the annual net income from the child's Exempt Trust as the Trustee deems necessary and advisable for the child's most comfortable maintenance and support and so much of the principal, even to the exhaustion thereof, as the Trustee deems necessary and advisable for the child's health. Subject to the needs of the child and with the prior written consent of the child, the Trustee shall pay to or for the benefit of the child's descendants, not necessarily in equal shares, so much of the remaining annual net income and principal as the Trustee deems necessary and advisable for their education, health, maintenance and support. The Trustee is requested to be generous in exercising its discretion to make expenditures to or for the benefit of my living children. The Trustee need not consider other resources available to the child and/or the child's descendants. The Trustee shall add undistributed annual net income to principal." The relevant portion of paragraph 4 (a) of the trust instrument governing the nonexempt trust mirrors paragraph 3 (a).

Margaret Spencer created the trust eight months after the parties separated and the defendant left the marital home. She specifically provided that the trust was for the benefit of "the child," i.e., the defendant, and "the child's descendants." Neither the trustee nor the court is authorized to change the beneficiary of the trust, but is bound by the terms of the trust instrument. "[G]enerally the administration of a trust must accord strictly

with the intent of the settlor and the terms of the trust, and . . . a court has no right to authorize the trustee to depart therefrom, and will do all within its power to see that the trust is executed in accordance with its terms . . . ." 76 Am. Jur. 2d, Trusts § 335 (1992). There is nothing within the trust instrument indicating that the settlor intended the plaintiff to benefit from the trust. Thus, the court could not order the trustee to allocate any portion of the trust for the benefit of the plaintiff.

The dissolution court did not distribute the trust as part of the marital property, but the court did acknowledge its existence and considered the trust when it fashioned its financial orders and the property distribution. Although the modification court improperly found that the trust was part of the initial property settlement, it correctly noted that the dissolution court "had before it all of the relevant trust documents and income statements." It also found that the "value of the trust has not changed substantially since the date of the judgment." Therefore, the status of the trust remained unchanged.

We now turn to the plaintiff's claim that because she is not a creditor of the defendant, she is not precluded from seeking to participate in the income from the trust even though it contains a spendthrift provision. Paragraph 6 (c) of the trust instrument states: "No interest of any beneficiary in any trust held under Paragraphs 3, 4 or 5 shall be subject to pledge, assignment, sale or transfer in any manner. No beneficiary shall have the power in any manner to anticipate, charge or encumber such interest. No such interest shall be liable or subject in any manner, while in the possession of the Trustee, for the beneficiary's debts, contracts, liabilities or torts."

"A trust which creates a fund for the benefit of another, secures it against the beneficiary's own

improvidence, and places it beyond the reach of his creditors is a spendthrift trust." *Zeoli* v. *Commissioner of Social Services*, 179 Conn. 83, 88, 425 A.2d 553 (1979); see also General Statutes § 52-321.[4] "[A] spendthrift trust is one that restricts both the beneficiary's ability to alienate his interest in the fund and his creditor's ability to seize the property in satisfaction of his debts; in contrast to other types of protective trusts, a spendthrift trust in the technical sense exists where there is an express provision forbidding anticipatory alienations and attachments by creditors." 76 Am. Jur. 2d, supra, § 121. "Where by statute or the trust terms it is provided that the interest of a beneficiary is not to be available to his creditors, and the court decisions in the state hold the provision valid without limit or qualification, obviously creditors have no rights or remedies as far as the trust property and the beneficiary's interest in it or the income thereof are concerned. They are limited to collection from sums after payment to the beneficiary, and to the products of such payments and to nontrust property." G. Bogert, Trusts and Trustees (2d Ed. Rev. 1992) § 227, p. 499.

"The well-settled rule in this state is that the exercise of discretion by the trustee of a spendthrift trust is subject to the court's control only to the extent that an abuse has occurred . . . ." *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 89. Furthermore, "Connecticut bars creditors from reaching a distribution except, and until, it be in the hands of the beneficiary. *Olson* v. *Olson*, [Superior Court, judicial district of New London, Docket No. 513444 (October 20, 1992) (7 C.S.C.R. 1247, 1248)]." *United States* v. *Cohn*, 855 F.

[4] General Statutes § 52-321 (a) provides: "If property has been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold the income, and the income has not been expressly given for the support of the beneficiary or his family, the income shall be liable in equity to the claims of all creditors of the beneficiary."

Sup. 572, 576 (D. Conn. 1994). " 'No title in the income passes to [the beneficiary] unless and until it is appropriated to him by the trustee, and then only to the amount determined by [the trustee].' *Bridgeport-City Trust Co.* v. *Beach,* 119 Conn. 131, 140, 174 A. 308 (1934); *Reilly* v. *State of Connecticut,* 119 Conn. 508, 512, 177 A. 528 (1935)." *United States* v. *Cohn,* supra, 576.

Our review of the clear and unambiguous language of the trust instrument reveals that Margaret Spencer intended to create a spendthrift trust that could not be reached by the defendant's creditors. Because the plaintiff obtained a judgment against the defendant for alimony and child support, her status is that of a creditor.[5] See *Cooley* v. *Cooley,* supra, 32 Conn. App. 169 (judgment in dissolution action established plaintiff's status as judgment creditor); *Urrata* v. *Izzillo,* 1 Conn. App. 17, 18, 467 A.2d 943 (1983) (former spouse is judgment creditor pursuant to judgment for alimony, support). Thus, the plaintiff can reach neither the income nor the principal until it is distributed and in the hands of the defendant.

The plaintiff maintains that the trustee's characterization of the distributions of the IRA to the trust as "income" or "principal" were arbitrary. She further argues that because the distributions are fully taxed as ordinary income under § 691 of the Internal Revenue Code,[6] the distributions are income to the trust. Even if we were to agree with the plaintiff's contention, the income of the trust would still be unavailable to her. We cannot conclude on the record before us that the trustee abused the powers granted to it in making the

---

[5] We note that our analysis and conclusion that the plaintiff is a judgment creditor of the defendant applies equally with regard to alimony and child support. In addition, the amount of the income generated by the trust is irrelevant because the distributions are within the discretion of the trustee. See *Zeoli* v. *Commissioner of Social Services,* supra, 179 Conn. 89.

[6] See 26 U.S.C. § 691.

distributions as it did. The distributions made by the trustee were for the education of the parties' children, for the maintenance and repair of the real property held by the trust, and for the maintenance and support of the defendant. Each of those distributions fell within the purposes designated by the trust instrument. Because of the nature of a spendthrift trust, the plaintiff is not entitled to the income, regardless of how it is character-ized by the trustee, prior to its distribution to the defendant.

As a final note, we address the plaintiff's claim that the court improperly disregarded the defendant's rent free use of the home owned by the trust, which is indirect income to the defendant. The plaintiff cites *Tremaine* v. *Tremaine*, 235 Conn. 45, 64, 663 A.2d 387 (1995), for the proposition that "the value of the house to the defendant is not what the house is worth, but rather how much the defendant's rent free use of the house saves him in living expenses." Even a cursory look at *Tremaine* reveals that the court, in construing the trust instrument, was called on to apply the law of the state of Ohio. Although it is axiomatic that this court is bound by the decisions of our Supreme Court; see *State* v. *James*, 69 Conn. App. 130, 133–34, 793 A.2d 1200, cert. denied, 260 Conn. 936, 802 A.2d 89 (2002); those decisions interpreting the laws of our sister states have no relevance in our application of Connecticut law. Even if we were persuaded by our Supreme Court's application of Ohio law, it would be of no avail to the plaintiff. As previously mentioned, the defendant resided in the home at the time of the parties' separa-tion. The dissolution court was aware of the use of the home and any indirect financial benefit to the defendant and, therefore, it cannot be considered as part of the modification equation.

Keeping the aforementioned principles in mind, and our conclusions derived therefrom, we now determine

whether the finding by the court of a substantial change in circumstances was an abuse of discretion. At the time of the dissolution, the defendant earned a $90,000 salary and received distributions from the trust. When Philbrook closed, the defendant lost his entire salary but received distributions from the trust totaling $30,000. Every other aspect of the defendant's financial situation remained static. Therefore, the court was limited in its consideration to only the defendant's loss of salary. Taking into account the distributions of the trust totaling $30,000, the defendant's income decreased by at least $60,000. We conclude that the court correctly applied the law governing modification of support orders in a dissolution matter and, on the basis of its subordinate findings, the court could reasonably have concluded that the defendant's decrease in income was a substantial change in circumstances warranting a modification.

The judgment is affirmed.

In this opinion the other judges concurred.