CHRISTINE ZEOLI ET AL. *v.* COMMISSIONER OF SOCIAL SERVICES

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 14—decision released September 4, 1979

*Michael A. Arcari,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Peter D. Hershman,* for the appellees (plaintiffs).

COTTER, C. J. This is an appeal from a judgment of the Court of Common Pleas reversing an order of the commissioner of the department of social services terminating medical assistance payments to the plaintiffs, Christine and Rita Zeoli.[1] The plaintiffs, mentally handicapped women who are

[1] On June 4, 1979, the Probate Court for the district of Hamden appointed Christine Vertefeuille as conservatrix for the persons and property of Christine and Rita Zeoli. On June 14, 1979, this court

incapable of caring for themselves, were placed in a convalescent institution on December 1, 1973, two months after their father's death. Payment of medical assistance also commenced on December 1, 1973, pursuant to § 17-134a of the General Statutes, which authorizes those benefits in accordance with title XIX of the Social Security Act, "Grants to States for Medical Assistance Programs." 42 U.S.C. §§ 1396–1396i.

On May 31, 1976, after notice, the payments were terminated. Upon request, a fair hearing was held pursuant to § 17-2a of the General Statutes on June 29, 1976. The hearing officer rendered a decision on July 8, 1976, upholding the termination of payments on the ground that the plaintiffs had assets available to them in excess of the permissible limits for medical assistance payments. The assets in question consisted of a joint savings account having a balance of $9515.85 as of November 1, 1975, which was held in the name of the plaintiffs' brother, Daniel Zeoli, as trustee, with the plaintiffs as beneficiaries.

The savings account comprises the proceeds from the sale of real property formerly owned by the plaintiffs' father, Nicola Zeoli. Through his will, Nicola Zeoli devised a one-half interest in this real property to his son, Daniel, and the remaining half was devised to Daniel as trustee for his two sisters, the plaintiffs. Acting in accordance with the powers granted to him in the will and with the approval of the Probate Court, Daniel sold the real property and deposited one-half of the proceeds in the savings bank account in question.

approved the substitution of Christine Vertefeuille, in her capacity as conservatrix, as plaintiff for Christine and Rita Zeoli in this appeal. To avoid confusion, this opinion will refer to the Zeoli sisters as the plaintiffs in this matter.

The underlying issue before this court is whether the plaintiffs were eligible for title XIX assistance under the pertinent state and federal statutes and regulations. The question of eligibility depends upon whether the savings account constitutes an asset of a spendthrift testamentary trust, whether that trust is intended for general or supplementary support, and whether the restrictions placed on the asset still permit it to be considered an available asset as this concept is defined by state and federal regulations for purposes of granting title XIX payments.

Nicola Zeoli's intent to create a testamentary trust is clear. In articles third, sixth, and eighth of his will he designated certain assets to be held in trust, appointed a trustee and gave him powers and standards by which to administer and distribute those assets including the power to sell any property in the trust and hold uninvested or reinvest any cash proceeds from such sale, and designated beneficiaries of the trust and remainder persons to receive whatever remains at the death of the beneficiaries.[2] See,

---

[2] For the purposes of this opinion, it is necessary only to set forth the provisions of article third of the will. Article third reads as follows:

"THIRD: All of the rest, residue and remainder of my property and estate, real, person or mixed, of whatsoever the same may consist and wheresoever the same may be situated, all of which is hereinafter referred to as my residuary estate, shall be disposed of as follows:

(a) I give, devise and bequeath one-half (½) of my residuary estate unto my son DANIEL ZEOLI, to be his absolutely and forever;

(b) I give, devise and bequeath one-half (½) of my residuary estate to my Trustee hereinafter named in trust NEVERTHELESS, to hold in a single trust for and until the death of the survivor of my daughters, to invest and reinvest the principal of such trust and to dispose of the net income and principal thereof as follows:

To pay or apply so much of the net income or the principal of such trust to or among either one or both of my daughters as shall be living from time to time during the term of such trust, and in such

generally, 1 Scott on Trusts (2d Ed.) § 2.3, pp. 36–37. On May 28, 1974, the Probate Court for the district of Hamden determined that a trust was created and appointed Daniel Zeoli, the testator's named trustee, to act as trustee. As previously mentioned, pursuant to the powers granted him in the will and with the Probate Court's approval, Daniel Zeoli sold the real property that constituted the residuary estate of the testator and deposited one-half of the proceeds in a trustee bank account. The bank account, as proceeds of the sale of the realty, must be considered an asset of the testamentary trust and subject to its terms.

proportions and amounts as my Trustee shall determine in his absolute and uncontrolled discretion. Such amounts of net income or principal may be paid or applied without regard to equality of distribution and regardless of whether any one of my daughters may be totally deprived of any benefit hereunder. My Trustee, in exercising his absolute and uncontrolled discretion, shall not be required to consider the amount of income from other sources of any beneficiary or the amount of any beneficiary's independent property or the extent to which any beneficiary may be entitled to support by a parent or any other person. The judgment of my Trustee as to the allocation of the net income or principal of this trust among the beneficiaries shall be final and conclusive upon all interested persons and upon making such payments or application my Trustee shall be fully released and discharged from all further liability or accountability therefor. My trustee shall not be required to distribute any net income of such trust currently and may, in his absolute and uncontrolled discretion, accumulate any part or all of the net income of such trust, which such accumulated net income shall be available for distribution to the beneficiaries as aforesaid.

Without in any way limiting the absolute discretion of my Trustee, it is my fond hope that my trustee pay or apply the net income or principal of the trust for the maintenance, support, education, health and general welfare of those of my daughters who my Trustee believes would benefit most from a share of the income of this trust after considering the income of the beneficiaries from other sources.

Upon the death of the survivor of my daughters living at my death, this trust shall terminate and the principal and any accumulated income therefrom shall be distributed equally among my then living issue, per stirpes."

A trust which creates a fund for the benefit of another, secures it against the beneficiary's own improvidence, and places it beyond the reach of his creditors is a spendthrift trust. *Carter* v. *Brownell,* 95 Conn. 216, 223, 111 A. 182. Section 52-321 of the General Statutes provides that trust fund income is not subject to the claims of creditors of the beneficiary if the trustee is granted the power to accumulate or withhold trust income or if the income has been expressly given for the support of the beneficiary or his family. See *Cromwell* v. *Converse,* 108 Conn. 412, 424-25, 143 A. 416; *Foley* v. *Hastings,* 107 Conn. 9, 13, 139 A. 305. Since Nicola Zeoli's will specifically provides the trustee with the power to accumulate and withhold trust income, its language creates a spendthrift trust under § 52-321.[3]

The defendant contends that even if a spendthrift trust is created under Nicola Zeoli's will, the funds are vulnerable to the state's claim because the intent of the plaintiffs' father was to create a trust for general support. See, generally, annot., 92 A.L.R.2d 838. Thus, the defendant maintains that the plain-

---

[3] The defendant maintains that § 52-321 is inapplicable in the present action because the state of Connecticut is not a creditor since it is not seeking reimbursement for its payments but rather termination of them. It seeks to distinguish the present case from *Bridgeport* v. *Reilly,* 133 Conn. 31, 47 A.2d 865, where this court denied a claim against a spendthrift trust by the city of Bridgeport for reimbursement for funds expended by the city for the care of the incapacitated beneficiary of the trust. To accept the state's contention would, however, be to venerate the slimmest of possible formal distinctions over substance. In fact, the formal distinction itself is no longer available.

In March, 1979, this court approved a motion of both parties to stipulate, pending this appeal, that the plaintiffs shall transfer to the state the assets in the savings account less sums excluded for burial reserve expenses and the maximum personal asset level allowable; that upon the transfer, the department of social services will

tiffs, or someone else on their behalf, have the right to compel the brother, as trustee, to release the trust assets for their care and support and that any refusal to do so would constitute an abuse of discretion under the terms of the will.

The well-settled rule in this state is that the exercise of discretion by the trustee of a spendthrift trust is subject to the court's control only to the extent that an abuse has occurred under the powers granted by the testamentary disposition. *Bridgeport* v. *Reilly,* 133 Conn. 31, 37, 47 A.2d 865; *In re Application of Smith,* 133 Conn. 6, 11, 47 A.2d 521. To determine the discretionary powers provided, it is necessary to ascertain the dispositive intention as expressed by the language of the entire will "in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition." *Gimbel* v. *Bernard F. & Alva B. Gimbel Foundation, Inc.,* 166 Conn. 21, 26, 347 A.2d 81. See *Rosa* v. *Palmer,* 177 Conn. 10, 13, 411 A.2d 12; *Colonial*

---

reinstate title XIX payments retroactive to the date of discontinuance of the benefits; that the sum transferred shall be treated as a recovery for past assistance supplied; that if the plaintiffs are successful in the appeal to this court, the department of social services will return the money to the plaintiffs and they will continue to receive title XIX assistance; and that if the state is successful in this appeal, the department of social services will retain the funds, and the assistance paid after March 1, 1973 will be deemed to have been wrongfully paid, but the plaintiffs will continue to receive title XIX assistance.

The commendable intent of this stipulation was to ensure that the plaintiffs would continue to receive uninterrupted medical assistance no matter what the result of this appeal; nonetheless, its effect is to reveal that in this case any distinction between seeking reimbursement as opposed to termination rings hollow. Under the circumstances, therefore, the provisions of § 52-321 of the General Statutes are applicable to the present appeal.

*Bank & Trust Co.* v. *Stevens,* 164 Conn. 31, 37, 316 A.2d 768; *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 279, 170 A.2d 130.

Applying these principles, we find that the testator's intent was to provide the trustee with sufficient flexibility to use the funds under the trust solely for supplemental support. Both the surrounding circumstances and the language of the will militate in favor of this interpretation. The trust established by Nicola Zeoli's will clearly recognizes the obvious incapacity of his daughters to care for themselves.[4] As the amount held under trust, approximately one-half of his entire estate,[5] indicates, the plaintiffs' father was a person of modest means. Presumably, the funds under the trust would not provide for general support of his daughters in an institution for much more than a few months. Moreover, at the time of the will's execution and at the time of the testator's death, the daughters were not receiving medical assistance payments and the testator could not know if and how soon such benefits would become available.

The trust created under the testator's will clearly contemplates the circumstances discussed above. The trust grants the trustee in express terms the power both to discriminate totally against either of the beneficiaries by withholding all income and to disregard funds that might be available to either

---

[4] At the time of the fair hearing, a physician's letter was made part of the record in this case. The physician stated that Christine and Rita Zeoli were mentally retarded with IQs of approximately 50-60 and incompetent to handle their own affairs. According to the plaintiffs, at the time of the execution of the will in 1963, the sisters were in their mid-forties.

[5] The residuary clause was the only dispositive provision of the testator's will.

of the beneficiaries. On the other hand, in precatory language, the trust provides that the trustee apply "the net income or principal of the trust for the maintenance, support, education, health and general welfare of those of my daughters who my Trustee believes would benefit most from a share of the income of this trust after considering the income of the beneficiaries from other sources."[6]

In granting the trustee the ability to discriminate against either of the beneficiaries as well as to consider other sources of funds available to the beneficiaries, the testator reveals an intent to provide for only the supplementary support of his daughters. The combination of express and precatory terms in the will attempts to grant the trustee flexibility to provide the support that would benefit either of the beneficiaries the most, that is, imposing on the trustee the legal duty to furnish only supplementary support. If the testator had desired to create a trust for general support, it would have been simple to do so and no discriminatory provision would have been necessary or desirable.

The defendant contends that if the testator intended the state to provide medical assistance benefits to his daughters, no spendthrift trust for supplemental support would have been needed and he would have simply devised all of his property to his son. This argument, however, fails to take into account both the testator's lack of certainty about the availability of welfare payments for his daughters at the time of the execution of his will and the

___

[6] Although words used in a will may be primarily precatory, their significance, in ascertaining the intent of the testator, is to be given full effect "if, from the whole instrument, it can be seen that [the precatory words] express the definite will of the testator." *Burley* v. *Maguire*, 127 Conn. 242, 245, 16 A.2d 358.

legal duty impressed upon the trustee by the trust to provide for supplementary support. The trust made clear, as no devise solely to his son could, the intent of the testator to provide funds from which some of the personal needs of his daughters could be satisfied.[7]

Since the assets held in the spendthrift trust were not intended for the plaintiffs' general support, they could not compel their distribution and a refusal of the trustee to make funds available cannot be considered an abuse of his discretion. See *Connecticut Bank & Trust Co.* v. *Hurlbutt*, 157 Conn. 315, 327, 254 A.2d 460; *Bridgeport* v. *Reilly*, 133 Conn. 31, 37–39, 47 A.2d 865; *Bridgeport-City Trust Co.* v. *Beach*, 119 Conn. 131, 141, 174 A. 308.

We have previously confronted the issue of abuse of discretion in similar circumstances. In *Bridgeport* v. *Reilly*, supra, the city claimed that a testamentary trust was created for the general support of the beneficiary, an insane person, and that the failure to distribute assets from the trust constituted an abuse of discretion. After carefully reviewing the terms of the will and the circumstances surrounding its execution, the court concluded that the testator had intended to create a trust for other than general support and that the trustee was "entitled" to consider other funds available before making any distributions. *Bridgeport* v. *Reilly*,

---

[7] As we have concluded, the trust established by Nicola Zeoli's will served to create a fiduciary obligation on the trustee for supplementary support. The balance in the account as of November 1, 1975, was $9515.85. On January 2, 1979, when the parties made a motion to stipulate that the funds were to be held by the state pending this appeal, the amount in the trust account was $8686.61. There is no evidence in the record before us to indicate that the sums already expended were for anything other than for the benefit of the plaintiffs.

supra, 37-39. See *Hoops* v. *Stephan,* 131 Conn. 138, 147, 38 A.2d 588; *Bridgeport-City Trust Co.* v. *Beach,* supra, 138.

In support of its proposition that the trustee in the present case had abused his discretion and that assets of the trust should be available to beneficiaries sustained by public support, the defendant relies on the Minnesota case of *McNiff* v. *Olmsted County Welfare Department,* 176 N.W.2d 888 (Minn.), and a series of lower court decisions in New York. In *McNiff,* however, the trust at issue was construed to be a general support trust. The Minnesota Supreme Court emphasized that, although the trust had two beneficiaries, it had been expressly drafted to provide for both beneficiaries and the court implied that it might have reached a different result had the trust explicitly granted the trustee the power to discriminate against one of the beneficiaries. Similarly, in the New York cases, the courts construed the provisions of the various trusts in question as implying an intent to provide for general support thus allowing for an invasion of the trust corpus in order to avoid resorting to public assistance. See, e.g., *In re Will of Marafioti,* 80 Misc. 2d 206, 209, 362 N.Y.S.2d 807; *In re Estate of Browning,* 76 Misc. 2d 1041, 1042–43, 352 N.Y.S.2d 769; *In re Will of Cooper,* 76 Misc. 2d 166, 168–69, 349 N.Y.S.2d 613; *In re Crow's Will,* 56 Misc. 2d 398, 401, 288 N.Y.S.2d 965.

Where the testator's intent has been interpreted as providing for other than general support for beneficiaries under a trust, however, courts have deemed the trustee's withholding of funds as not constituting an abuse of discretion even though the beneficiaries' general support came from public

assistance. *In re Hinckley's Estate,* 195 Cal. App. 2d 164, 170, 15 Cal. Rptr. 570; *Town of Randolph* v. *Roberts,* 346 Mass. 578, 580, 195 N.E.2d 72; *In re Wright's Will,* 12 Wis. 2d 375, 379, 107 N.W.2d 146.

Under applicable federal law, only assets *actually available* to a medical assistance recipient may be considered by the state in determining eligibility for public assistance programs such as title XIX. 45 C.F.R. § 248.3(b)(1), recodified and redesignated as 42 C.F.R. 448.3(b)(1) (Sept. 30, 1977); 42 U.S.C. § 1396a(a)(17)(B). A state may not, in administering the eligibility requirements of its public assistance program pursuant to title XIX, either presume the availability of assets not actually available nor add eligibility criteria not expressly authorized by Congress. See, e.g., *Philbrook* v. *Glodgett,* 421 U.S. 707, 95 S. Ct. 1893, 44 L. Ed. 2d 525; *Van Lare* v. *Hurley,* 421 U.S. 338, 95 S. Ct. 1741, 44 L. Ed. 2d 208; *Burns* v. *Alcala,* 420 U.S. 575, 95 S. Ct. 1180, 43 L. Ed. 2d 469; *Shea* v. *Vialpando,* 416 U.S. 251, 94 S. Ct. 1746, 40 L. Ed. 2d 120; *Buckner* v. *Maher,* 424 F. Sup. 366 (D. Conn.), aff'd, 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 184; *Owens* v. *Roberts,* 377 F. Sup. 45 (M.D. Fla.); *Wilczynski* v. *Harder,* 323 F. Sup. 509 (D. Conn.); *Solman* v. *Shapiro,* 300 F. Sup. 409 (D. Conn.), aff'd, 396 U.S. 5, 90 S. Ct. 25, 24 L. Ed. 2d 5; *Shook* v. *Lavine,* 49 App. Div. 2d 238, 374 N.Y.S.2d 187. See also *Rowland* v. *Maher,* 176 Conn. 57, 61, 404 A.2d 894.

The maximum personal resources a recipient of assistance under title XIX in Connecticut is permitted to own is $250 ($600 may be reserved for burial expenses as well) under the regulations of the department of social services establishing limitations for purposes of both eligibility and con-

tinued assistance under title XIX. Connecticut State Department of Income Maintenance Manual, Volume III, supplement D-2, index No. D-244.1, p. 4.[8] In his decision to terminate the benefits of the plaintiffs, the fair hearing officer applied a provision from the Department of Social Services Manual, Volume I, Chapter III, index No. 323.1 B which states that a bank account "owned by an applicant or beneficiary which has been placed in the control of a trustee must be returned to the sole control of the owner."

Although the sum in the savings account in question would exceed the asset limitations imposed by the state regulation mentioned above, in light of this court's previous discussion it is evident that the plaintiffs have never "owned" the funds in the savings account. The plaintiffs cannot compel distribution or in any manner alienate the money in the account beyond that authorized to be distributed as supplementary support in the trustee's discretion.

The intent of § 323.1 B appears to be to foreclose the possibility of individuals creating trusts in order to claim poverty to obtain public support. Only bank accounts owned by the applicants or beneficiaries prior to their transfer to a trust must be returned to the sole control of the owner. Thus, the defendant's reliance on two cases, *Lerner* v. *Division of Family Services,* 70 Wis. 2d 670, 235 N.W.2d 478, and *Abramson* v. *Welfare Commissioner,* 31 Conn. Sup. 544, 330 A.2d 822, is misplaced.

In *Abramson,* the plaintiff transferred assets to her daughters in order to qualify for welfare; however, she was not able to show that a valid debt had

---

[8] Due to state reorganization, which took effect on January 1, 1979, the regulations of the state department of social services are now cited as regulations of the state department of income maintenance.

been incurred. The transfer was thus without consideration and invalid under the state welfare department regulations. *Abramson* v. *Welfare Commissioner,* supra, 546–48. The *Lerner* court also found that the plaintiff had transferred her property without adequate consideration and that this divestment was in contemplation of becoming eligible for public assistance. *Lerner* v. *Division of Family Services,* supra, 677. In each case the court looked to the applicants' previous control or the transferred assets to determine the status of the account. In fact, the *Lerner* court explicitly asserted that *Abramson* as well as *Lerner* are to be distinguished from those cases like the one before this court involving evaluations of applicants' assets which were unavailable or never had been available to them. *Lerner* v. *Division of Family Services,* supra, 679.

The state's final contention is that public policy requires that the state's exercise of its welfare eligibility laws not be subject to any power of a trustee or creator of a trust, spendthrift or otherwise, to withhold trust assets from a beneficiary. To create a continuing source of supplemental funds to provide for personal items otherwise unavailable to their incapacitated relatives, many persons have undoubtedly created spendthrift trusts in their wills in accordance with the principles enunciated in *Bridgeport* v. *Reilly,* 133 Conn. 31, 37–39, 47 A.2d 865. These testators are undoubtedly aware that an outright bequest to an incapacitated relative would become an asset within the reach of the state to reimburse it for care rendered.

Two other jurisdictions confronted with this issue have explicitly stated that public policy does

not forbid the beneficiary of a private trust from receiving support at public expense. *Town of Randolph* v. *Roberts*, 346 Mass. 578, 580, 195 N.E.2d 72; *In re Wright's Will*, 12 Wis. 2d 375, 379, 107 N.W.2d 146. In *In re Wright's Will*, the trust expressly provided that its funds were to be conserved for benefits not provided at public expense. None of the cases cited by the state, which support the proposition that the assets in a general support spendthrift trust may be reached by the government to reimburse it for care rendered to an incapacitated beneficiary, assert a contrary proposition concerning public policy. These cases only state that the particular intent of the testator in question was not that the benevolence of the state be used as the instrument for preserving trust assets. *McNiff* v. *Olmsted County Welfare Department*, 176 N.W.2d 888, 891 (Minn.); *In re Crow's Will*, 56 Misc. 2d 398, 401, 288 N.Y.S.2d 965.

Hence, in view of the factual situation presented to us in this case, it is clear that controlling federal law precludes the commissioner of the department of social services from terminating medical assistance payments under title XIX based upon the joint savings account held in a spendthrift trust for the plaintiffs. The trial court did not err in determining that the commissioner acted illegally or so arbitrarily and unreasonably as to abuse his discretion.

There is no error.

In this opinion the other judges concurred.