******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NANCY POWELL-FERRI *v.* PAUL JOHN FERRI, JR.
## (SC 19434)

Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

The plaintiff appealed from the judgment of the trial court dissolving her marriage to the defendant, who was the sole beneficiary of two trusts, and granting certain other relief. Prior to the parties' marriage, the defendant's father settled the first trust, which was used primarily for investment purposes but was also used to fund certain improvements to the marital home and to pay the parties' taxes. After the commencement of the dissolution action, the trustees of that trust decanted a substantial portion of its assets to create a second, spendthrift trust for the defendant's sole benefit. In a related declaratory judgment action, the court determined that the decanting was improper and ordered the return of 75 percent of the assets to the first trust. The trial court in the present case determined that the assets subject to that order were marital property but declined to divide them equally as the plaintiff had requested. In reaching its conclusion, the trial court recognized that any assets remaining in the spendthrift trust following resolution of a pending appeal in the declaratory judgment action were not marital property. The trial court also denied the plaintiff's motion for contempt, in which the plaintiff had claimed that the rule of practice (§ 25-5) governing automatic orders in dissolution proceedings required the defendant to bring a civil action against the trustees to challenge the decanting of assets, and ordered the defendant to pay attorney's fees to the plaintiff in an amount equal to what he paid his own attorneys, but only until he made his first lump sum alimony payment. On appeal, the plaintiff claimed that the trial court incorrectly found that she had not contributed to the value of the first trust, improperly declined to find the defendant in contempt, incorrectly failed to include the value of the spendthrift trust in the marital estate, and improperly structured its award of attorney's fees. *Held*:

1. The plaintiff could not prevail on her claim that the trial court incorrectly found that she did not contribute to the value of the first trust: even if this court were to accept the plaintiff's factual assertions as true, in light of the conclusion set forth in *Ferri* v. *Powell-Ferri* (326 Conn.    ) that the trustees' decision to decant was proper and the fact that the decanted assets could not be reached once they were placed into the spendthrift trust, the assets from the first trust could not be considered as part of the dissolution judgment and, thus, it was unnecessary to consider the merits of the plaintiff's arguments concerning her contributions to the value of the first trust.

2. The trial court did not abuse its discretion in declining to find the defendant in contempt, this court having concluded that the automatic orders required by Practice Book § 25-5 did not impose any affirmative obligation on the defendant to bring a separate action against the trustees for lawfully decanting assets from the first trust; even if there were instances in which a party could be required to take affirmative action to recover marital assets, the trustees in the present did not engage in any illegal activity and had not breached the terms of the first trust, and, because the defendant was unaware of the decanting, he could not have assisted in dissipation of marital assets or otherwise have engaged in the type of intentional waste or selfish impropriety necessary to constitute dissipation.

3. The trial court did not abuse its discretion in failing to consider the entire value of the spendthrift trust as a marital asset on the ground that the defendant possessed a chose in action for breach of fiduciary duty against the trustees in an equal amount; although a chose in action existing at the time of dissolution can be classified as an intangible property interest subject to distribution in a dissolution proceeding, the defendant in the present case possessed no such interest because the trustees acted lawfully and in his best interest, and the plaintiff failed

to demonstrate that the trustees breached their fiduciary duty to the defendant.

4. The trial court's award of attorney's fees did not constitute an abuse of discretion: the structure of the trial court's award of attorney's fees, which was based on the amount the defendant paid to his attorneys and which terminated upon his first lump sum alimony payment, was not an abuse of discretion in the absence of evidence that the defendant had failed to pay his attorneys or would fail to do so in the future; furthermore, the trial court did not abuse its discretion in determining that the payment of some legal costs by the plaintiff would not undermine its financial orders in light of the significant awards of alimony and child support, substantial litigation expenses incurred by the defendant, and the trial court's other financial orders.

Argued November 12, 2015—officially released August 8, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the case was transferred to the judicial district of Middlesex and tried to the court, *Munro, J.*; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed. *Affirmed.*

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd* and, on the brief, *Thomas P. Parrino* and *Laura R. Shattuck*, for the appellant (plaintiff).

*Charles D. Ray*, with whom were *Sarah E. Murray* and, on the brief, *Carole Topol Orland*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. This appeal arises from an action dissolving the marriage of the plaintiff, Nancy Powell-Ferri, and the defendant, Paul John Ferri, Jr. (Ferri). On appeal, Powell-Ferri challenges numerous financial orders entered by the trial court. Specifically, Powell-Ferri asserts that the trial court incorrectly (1) determined that she did not contribute to a trust created by Ferri's father, Paul John Ferri, Sr., in 1983 (1983 trust), (2) denied her motion for contempt, (3) determined that a trust created in 2011 (2011 trust) was not a marital asset, and (4) structured the award of attorney's fees. We disagree with Powell-Ferri and, accordingly, affirm the judgment of the trial court.

In its memorandum of decision, the trial court set forth the following relevant facts and procedural history. The trial court dissolved the parties' marriage in August, 2014, and entered financial orders. At the time of dissolution, the parties had been married for nineteen years and had three daughters, all of whom were minors. Powell-Ferri was a homemaker throughout the marriage, taking care of all three children and the family household. For most of the marriage, the parties lived in a home they owned in Farmington. Ferri briefly worked for his father's venture capital firm, Matrix Partners, but for the majority of the marriage, his income was derived from numerous Valvoline franchises (franchises).

Ferri is the sole beneficiary of the 1983 trust. The 1983 trust is central to the underlying dissolution action, and the parties' use of the trust during the marriage strongly informed the trial court's financial orders. The parties did not rely on the trust for their daily living expenses. Ferri primarily used the 1983 trust for investment purposes. There were a few instances during the marriage when the 1983 trust was not used for purely investment purposes; for example, the trust provided $300,000 toward home improvements and regularly paid the parties' taxes. The parties, in turn, regularly contributed their tax refund checks to the trust. Ferri also used funds from the trust during the marriage to purchase ownership interests in the franchises. In March, 2011, while the underlying dissolution action was pending, the trustees of the 1983 trust (trustees) created a second trust whose sole beneficiary was Ferri (2011 trust). The trustees then decanted a substantial portion of the assets in the 1983 trust to the 2011 trust.

Throughout the divorce, the parties disputed the valuation of the 1983 trust. The trustees valued the trust at approximately $69 million, Powell-Ferri valued it at approximately $98 million, and Ferri at approximately $80.5 million. The majority of the trust value derived from three assets: securities, hedge and investment funds, and various limited liability companies related

to the franchises. The parties did not dispute the value of the securities, as these were publicly traded. The parties also did not contest the values of the limited liability companies, which obtained ownership of the franchises using, in part, funds from the 1983 trust. Specifically, the trial court found that the 1983 trust contributed between $5 million and $8 million toward the acquisition of the franchises. The parties agreed that the franchise related entities were worth approximately $14.5 million. The parties did, however, dispute the value of the hedge and investment fund assets. The court engaged in a detailed and thorough analysis to determine the value of these assets. In a related declaratory judgment action, the trial court found that the trustees were not authorized to decant, and ordered the trustees to return 75 percent of the assets to the 1983 trust,[1] which the trial court in the present case had determined was marital property.

Although the trial court determined 75 percent of the assets transferred from the 1983 trust to be marital property, it did not divide those assets equally as Powell-Ferri had requested. The trial court found that Powell-Ferri had requested too great a share of those assets because the 1983 trust represented a sum of money that the parties knew they had in reserve so that they would "always be free from want or need in the lifestyle they had established." The trial court recognized that the 1983 trust was "an asset that [Ferri] brought to the marriage, that it is the initial product of the labor of his father, not him, and that it should be left sufficiently intact so that it may be used for investment . . . purposes as [Ferri] had envisioned it." The court also recognized that whatever assets remained in the 2011 trust following an appeal in the declaratory judgment action; see footnote 1 of this opinion; were not marital assets because Ferri had no present or future entitlement to those funds.

On the basis of that separate action and the uncertainty as to the validity of the decanting, the trial court fashioned two alternative financial orders. The first order contemplated a return of assets to the 1983 trust. The second order assumed that the trustees' decision to decant was upheld on appeal and that the assets of the 2011 trust were left undisturbed. Under the first order, Ferri was required to pay Powell-Ferri $12 million in lump sum alimony over the course of several years. The trial court found that, under this scenario, it was "equitable to order a sufficient lump sum alimony [so] that [Powell-Ferri] will have no need for dependency on [Ferri] in the future." Conversely, under the second order, Ferri was required to pay, inter alia, $25,000 per month in alimony.

As we explained more fully in the appeal pertaining to the declaratory judgment action; *Ferri* v. *Powell-Ferri*, 326 Conn.    ,    A.3d    (2017); the issue of

whether the trustees had the authority to decant the assets of the 1983 trust into the 2011 trust, presented a novel issue of Massachusetts law. Therefore, we certified the following three questions to the Massachusetts Supreme Judicial Court: (1) "Under Massachusetts law, did the terms of [the 1983 trust] empower [the] trustees to distribute substantially all of its assets . . . to [the 2011 trust]?" (2) "If the answer to [the first question] is 'no,' should either [75 percent] or [100 percent] of the assets of the 2011 [t]rust be returned to the 1983 [t]rust to restore the status quo prior to the decanting?" (3) "Under Massachusetts law, should a court, in interpreting whether [Ferri's father] intended to permit decanting to another trust, consider an affidavit [from him], offered to establish what he intended when he created the 1983 [t]rust?" The Massachusetts Supreme Judicial Court answered the first and third questions in the affirmative. *Ferri* v. *Powell-Ferri*, 476 Mass. 651, 663–64, 72 N.E.3d 541 (2017). In *Ferri* v. *Powell-Ferri*, supra, 326 Conn.     , we adopt the Massachusetts Supreme Judicial Court's thorough and well reasoned decision in full. On the basis of that decision, we reversed the judgment of the trial court in the declaratory judgment action as it related to the decanting of assets. Accordingly, the financial order that we must consider in the present appeal is the one that did not consider the assets decanted from the 1983 trust.

I

Powell-Ferri's first claim on appeal is that the trial court incorrectly determined that she did not contribute to the value of the 1983 trust. Powell-Ferri identifies two reasons why the trial court's finding was incorrect: (1) her homemaking efforts allowed Ferri to develop the business assets that comprise a significant portion of the 1983 trust; and (2) she regularly funded the 1983 trust by contributing substantial tax refund checks. Even if we accept Powell-Ferri's assertions in this regard, the Massachusetts Supreme Judicial Court has determined that the decanting was appropriate. Consequently, the assets from the 1983 trust cannot be considered as part of the dissolution judgment in the present case.

We begin our analysis with the standard of review applicable to a trial court's financial orders. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that

the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 280 Conn. 764, 774–75, 911 A.2d 1077 (2007).

As we explained previously in this opinion, the trial court drafted two financial orders. The first order, which was to be used if the decanting was found to be improper, considered 75 percent of the original assets from the 1983 trust. The second order, which would continue in the event that the decanting was found to be appropriate, did not include consideration of any assets from either trust. Neither party has challenged the latter. Because the Massachusetts Supreme Judicial Court found that the trustees' decision to decant was proper, virtually all of the assets from the 1983 trust were effectively transferred into the 2011 trust.

The 2011 trust is a spendthrift trust and, thus, is not considered an asset of the marital estate that the court may divide under General Statutes § 46b-81.[2] "A trust which creates a fund for the benefit of another, secures it against the beneficiary's own improvidence, and places it beyond the reach of his creditors is a spendthrift trust." *Zeoli* v. *Commissioner of Social Services*, 179 Conn. 83, 88, 425 A.2d 553 (1979). Because Powell-Ferri obtained a judgment against Ferri for alimony and child support, her status is that of a creditor. See *Spencer* v. *Spencer*, 71 Conn. App. 475, 486, 802 A.2d 215 (2002). Although the court could divide those assets while they were held in the 1983 trust, it could not reach them once they were moved into the 2011 trust.

We note that, although the trial court could not consider the assets decanted to the 2011 trust for equitable distribution purposes, it could, and did, consider Ferri's ability to earn additional income when creating its alimony orders under General Statutes § 46b-82.[3] The trial court awarded substantially more of the marital assets to Powell-Ferri, including the marital home. The trial court found that Powell-Ferri's "ability to acquire future assets [was] severely limited." Conversely, the trial court found that Ferri was "likely to quickly pick up the pieces of his economic future after this case is over" and that the trust funds had routinely supported his investments. Notably, the trial court ordered Ferri to pay Powell-Ferri $300,000 in alimony annually, despite the fact that, when the present action was commenced, Ferri had been earning only $200,000 annually. Ferri was also required to pay Powell-Ferri 20 percent of his

annual earnings over $500,000.

We have repeatedly recognized that "[i]n determining the assignment of marital property under § 46b-81 or alimony under § 46b-82, a trial court must weigh the 'station' or standard of living of the parties in light of other statutory factors such as the length of the marriage, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." *Blake* v. *Blake*, 207 Conn. 217, 232, 541 A.2d 1201 (1988). In the present case, the trial court did weigh these statutory factors when determining both the division of marital property and the award of alimony. Accordingly, we cannot conclude that the trial court abused its discretion in declining to treat the 2011 trust as a marital asset.

Because the Massachusetts Supreme Judicial Court determined that the decanting was proper, and because those assets could not be reached once placed in the 2011 trust, we need not consider Powell-Ferri's arguments concerning contributions to the 1983 trust.

II

Powell-Ferri next claims that the trial court improperly declined to find Ferri in contempt. Specifically, Powell-Ferri claims that the trial court incorrectly found that Ferri did not have an obligation under Practice Book § 25-5 to bring an action against the trustees and seek the return of the assets decanted from the 1983 trust. Powell-Ferri claims that, under § 25-5 (b), Ferri had an obligation to resist the trustees because decanting the 1983 trust was "the type of disruption to the status quo the automatic orders are intended to prevent," and that the language of § 25-5 (b) "is sufficiently capacious to include [Ferri's] acquiescence . . . as conduct that the orders prohibit." We disagree. The automatic orders do not impose any obligation on Ferri to bring an action against the trustees for lawfully decanting assets from the 1983 trust.

We begin with general principles of law and the applicable standards of review. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007). A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when "the contemnor, through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) Id. Consistent with the foregoing, when we review such a judgment, we first consider the "threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt." Id., 693. This question presents a legal inquiry subject to de novo review. Id. "Second, if we conclude that the underlying court order

was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." Id., 693–94; see also *Parisi* v. *Parisi*, 315 Conn. 370, 380, 107 A.3d 920 (2015); *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007); *Eldridge* v. *Eldridge*, 244 Conn. 523, 526–29, 710 A.2d 757 (1998); *McGuire* v. *McGuire*, 102 Conn. App. 79, 82, 924 A.2d 886 (2007).

We first note that the automatic orders do not apply to the trustees' actions. The automatic orders, by their explicit terms, do not apply to nonparties. Practice Book § 25-5 (b) (1) provides in relevant part: "Neither party shall sell, transfer, exchange, assign, remove, or in any way dispose of . . . any property . . . ." (Emphasis added.) Powell-Ferri recognizes this fact and does not claim that the trustees violated the automatic orders when they decanted assets from the 1983 trust. Instead, she argues that Ferri violated the automatic orders by failing to seek restoration of the decanted assets through a civil action. Powell-Ferri makes this claim despite the trial court's finding that Ferri was not involved in the decanting and did not otherwise facilitate the creation of the 2011 trust. Powell-Ferri has not challenged that finding in the present appeal.

In support of her conclusion that Ferri violated the automatic orders, Powell-Ferri embarks upon an unconvincing analysis of the term " 'dispose of' " in an attempt to reach a definition that encompasses Ferri's actions, or lack thereof. Powell-Ferri ultimately declares that " 'dispose of' " is equivalent in meaning to " 'relinquish.' " Powell-Ferri suggests that, even though Ferri did not take an active role in decanting the trust, he nevertheless violated the automatic orders because he "relinquished" his right to 75 percent of the 1983 trust when he failed to bring a civil action against the trustees in order to recover those assets. This claim is not persuasive for two reasons.

First, Powell-Ferri's interpretation of the obligations imposed by Practice Book § 25-5 (b) is not supported by any relevant case law. None of the cases in which we have found dissipation of marital assets is factually similar to the present case. "Generally, dissipation is intended to address the situation in which one spouse conceals, conveys or wastes marital assets in anticipation of a divorce. . . . Most courts have concluded that some type of improper conduct is required before a finding of dissipation can be made. Thus, courts have traditionally recognized dissipation in the following paradigmatic contexts: gambling, support of a paramour, or the transfer of an asset to a third party for little or no consideration. Well-defined contours of the doctrine are somewhat elusive, however, particularly in more

factually ambiguous situations." (Citation omitted; footnote omitted.) *Gershman* v. *Gershman*, 286 Conn. 341, 346–47, 943 A.2d 1091 (2008). The facts here do not involve any of the traditionally recognized paradigmatic contexts, and, thus, we must determine whether the present case is one of the rare factually ambiguous situations which nevertheless constitutes dissipation. It is not.

Powell-Ferri has failed to convince us that Ferri's failure to bring an action against the trustees was equivalent to a dissipation of marital property in violation of Practice Book § 25-5 (b) (1). Powell-Ferri claims that several cases, both from this court and other jurisdictions establish that Ferri's failure to pursue recovery of the 1983 trust assets is equivalent to dissipation of marital assets. Specifically, Powell-Ferri claims that *Finan* v. *Finan*, 287 Conn. 491, 949 A.2d 468 (2008), and *Gershman* v. *Gershman*, supra, 286 Conn. 341, establish that Ferri's decision not to bring an action against the trustees constitutes the "sort of dissipation" that the automatic orders are intended to prevent. Powell-Ferri overlooks a fundamental distinction between those cases and the present case. In *Gershman* v. *Gershman*, supra, 351, the defendant was accused of dissipating marital assets because he made bad investments and he spent marital assets on an excessively expensive marital home. In *Finan* v. *Finan*, supra, 494, the plaintiff claimed that the defendant had dissipated marital assets because he spent large sums of money prior to the parties' separation. Both of these cases involved actions taken directly by one of the parties, not by an unrelated third party. There is no allegation in the present case that Ferri engaged in any affirmative act to remove assets from the 1983 trust.

Powell-Ferri also claims that numerous cases from other jurisdictions support her conclusion that Ferri's failure to act violated Practice Book § 25-5 (b) (1). These cases are also inapposite. For example, in *In re Marriage of Cook*, 117 Ill. App. 3d 844, 853–54, 453 N.E.2d 1357 (1983), the court found that a husband had dissipated marital assets because he stopped paying the mortgages and taxes on various properties the couple owned. Likewise, in *In re Marriage of Thomas*, 239 Ill. App. 3d 992, 995, 608 N.E.2d 585 (1993), the court found that a husband had dissipated marital assets because he caused the couple's business to become less profitable "either through his inattention to the quality of service the corporation was supplying its clients or through his failure to solicit additional clients or through his outright stealing of clients for his new business." Additionally, in *Heins* v. *Heins*, 783 S.W.2d 481, 484–85 (Mo. App. 1990), the court found that a husband had dissipated marital assets when he purposefully failed to pay the mortgage in order to have his wife removed from the marital home. Finally, in *Maggiore* v. *Maggiore*, 91 App. Div. 3d 1096, 1096–97, 937 N.Y.S.2d 366 (2012),

the trial court found that a defendant had dissipated marital assets after he failed to make mortgage payments. In that case, the trial court had given the defendant authority to remove money from a retirement account to make mortgage payments, but he instead used the money for personal purposes. Id., 1097. In all of these cases cited by Powell-Ferri, the finding of dissipation rested on actions taken directly by a party or because of that party's failure to continue fulfilling a preexisting financial obligation that resulted in the loss of marital assets. In none of these cases did the court find that a party to a dissolution proceeding had an obligation to file a separate civil action in order to recover assets from a third party.

Second, Powell-Ferri's argument is not supported by our rules of practice. Nothing in our rules of practice requires a party to file an action against a third party whenever he or she may have a viable cause of action, particularly when the third party acted lawfully and in that party's best interest. There are numerous reasons why a party may choose not to bring an action. The trial court found that Ferri declined to take action because he did not want to bring an action against his family and because he believed that the trustees acted in his best interest. Even if Ferri believed that he would be successful in an action against the trustees, he reasonably could have concluded it would not be worth alienating his family to recover discretionary control over assets that he evinced little interest in using.

Furthermore, imposing an obligation on parties in divorce proceedings to bring separate actions against third parties, particularly when that party feels that filing such an action is against their best interest, is poor public policy and could lead to untenable results. For example, if a party was obligated to bring such an action whenever their spouse claimed that they are potentially entitled to recover damages, that party may feel compelled to bring such an action by the prospect of sanctions for dissipation of assets. If that separate action fails, however, that same party may then be accused of dissipating assets by pursuing a meritless civil claim.

The automatic orders do not require Ferri to take all conceivable actions to recover assets not under his control. Powell-Ferri claims that Practice Book § 25-5 (b) (1) prohibits Ferri's "acquiescence" in the trustees' decanting because that omission amounts to a disposition of a marital asset. Even if there were instances in which a party would be required to take an affirmative action to recover marital assets, this is not such a case. The Massachusetts Supreme Judicial Court held that the trustees were permitted to decant assets from the 1983 trust to the 2011 trust. The trustees, therefore, did not engage in any illegal activity and did not breach any conditions of the 1983 trust agreement. Powell-

Ferri also did not establish that Ferri was aware of the creation of the 2011 trust before it occurred, let alone that he was somehow involved in the decanting of assets. Because Ferri was unaware of the decanting, he could not have taken any affirmative acts or in any way assisted in the dissipation of marital assets. Ferri did not affirmatively engage in the type of intentional waste or selfish impropriety necessary to constitute dissipation. See *Gershman* v. *Gershman*, supra, 286 Conn. 350–51; see also *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 225, 116 A.3d 297 (2015) ("[w]e conclude that this state does not require a party to a dissolution action to take affirmative steps to recover marital assets taken by a third party"). We therefore reject Powell-Ferri's claim that § 25-5 (b) (1) required Ferri to bring an action against the trustees, and, therefore, we conclude that the trial court properly declined to find Ferri in contempt.

### III

Powell-Ferri also claims that the value of the entire 2011 trust, not just the 75 percent that the trial court ordered returned, should have been designated as marital property because Ferri has a chose in action for the entire value of the 1983 trust. The Massachusetts Supreme Judicial Court held that the trustees were authorized to decant all of the assets, and, therefore, none of the 1983 trust is a marital asset. Powell-Ferri argues that even if the trustees acted lawfully and Ferri believes that their actions were in his best interest, he nevertheless has a concrete chose in action for breach of fiduciary duty against the trustees that the trial court should have considered as a marital asset. We disagree.

We review the trial court's decision to disregard Powell-Ferri's chose of action claim in fashioning its financial orders for abuse of discretion. See *Weinstein* v. *Weinstein*, supra, 280 Conn. 774–75; see also *Hornung* v. *Hornung*, 323 Conn. 144, 152, 146 A.3d 912 (2016) ("financial orders in family matters are generally reviewed for an abuse of discretion").

Powell-Ferri does not dispute that the trial court correctly recognized that the 2011 trust was not marital property because it was a spendthrift trust. See *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 88 ("[a] trust which creates a fund for the benefit of another, secures it against the beneficiary's own improvidence, and places it beyond the reach of his creditors is a spendthrift trust"); *Cooley* v. *Cooley*, 32 Conn. App. 152, 169, 628 A.2d 608 (judgment in dissolution action established former spouse's status as judgment creditor), cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). The Massachusetts Supreme Judicial Court determined that the decanting of the 1983 trust was permitted, meaning that virtually all of the trust assets were beyond the trial court's consideration in the dissolution action. Nevertheless, Powell-Ferri asserts that

the trial court should have considered the entire 2011 trust as marital property because Ferri had a chose in action against the trustees for breach of fiduciary duty. We are not persuaded.

Powell-Ferri fails to establish that Ferri had a chose in action that the court could have distributed. A chose in action can be classified as an intangible property interest subject to distribution under § 46b-81 only if Ferri possessed an existing cause of action for breach of fiduciary duty at the time of dissolution. See *Mickey* v. *Mickey*, 292 Conn. 597, 624–25 n.20, 974 A.2d 641 (2009). In general, a claim must have been asserted or commenced in order to be recognized as a chose in action. "A chose in action is not potential or inchoate but rather is an issue that has been the subject of litigation or, at the very least, is in the process of being litigated. Where a putative claim has neither been asserted nor commenced, the person who has the claim can only be said to have a 'potential' chose in action." (Footnote omitted.) 73 C.J.S. 8, Property § 5 (2004). This court has also recognized that when an individual has been given the right to receive a promised benefit under certain prescribed conditions, and is denied that benefit, he or she may have a chose in action in contract. For example, a pensioner who has attained a prescribed age and fulfilled a required number of years of service to the employer would have a chose in action in contract against the employer if the employer refused to pay. *Bornemann* v. *Bornemann*, 245 Conn. 508, 517, 752 A.2d 978 (1998). This is because the pension benefits created in their holder an enforceable contract right, and not a mere expectancy. The present case, however, represents an entirely different scenario. Although Ferri became entitled to withdraw an increasing amount of principal from the 1983 trust as he aged, this right was not the product of a contract for which both parties provided consideration. Instead, Ferri's father created the trust for Ferri's benefit and, in doing so, dictated the terms by which Ferri could access the funds. As the Massachusetts Supreme Judicial Court has determined, Ferri's father included a provision allowing the trustees to decant the entire trust at any time, meaning that Ferri could not pursue an action for breach of contract based on the decanting. Furthermore, the trustees were not required to distribute funds unless Ferri, who is the only beneficiary, requested them. He did not. There is no chose of action because the trustees acted lawfully and in Ferri's best interest. Furthermore, Ferri did not assert a claim against the trustees for breach of fiduciary duty, and there is no evidence that he ever intends to do so.

Moreover, Powell-Ferri does not point to any evidence that the trustees breached their fiduciary duty to Ferri. The trial court found that "[a]s of yet, there has been no finding of a breach of duty by them, notwithstanding Powell-Ferri's vigorous argument that

such a finding has already been made by this court. . . . There is no specter of harmful conduct imminent or proposed by the trustees." (Citation omitted.) In response, Powell-Ferri gives two reasons why Ferri should bring an action against the trustees for breach of fiduciary duty. Neither is convincing. Powell-Ferri first asserts that the trustees stripped Ferri of a thing of value—namely, his ability to withdraw the principal from the 1983 trust. Powell-Ferri asserts that the decanting was "patently unreasonable because no court would distribute to [her] the entire 1983 trust corpus . . . ." Powell-Ferri claims that, because at the time of decanting Ferri was able to withdraw funds from the 1983 trust, he was objectively worse off after those funds were transferred into the 2011 trust. Powell-Ferri claims that even if the court had awarded her one half of the 1983 trust, as she had requested, Ferri would be better off having unfettered access to the remainder.

Powell-Ferri's assertion is contradicted by Ferri's testimony and the parties' use of the 1983 trust throughout the marriage. The trial court found that Ferri declined to challenge the decanting in court because he did not want to bring a civil action against his family, because he thought that the trustees acted in his best interest, and because he did not think that Powell-Ferri should share in any of the assets of the 1983 trust. Furthermore, Ferri envisioned the trust as being for investment purposes. The parties' conduct prior to divorce supports Ferri's assertion. Throughout the course of the marriage, the parties rarely used the 1983 trust assets. Apart from funding a renovation of the marital home and paying the parties' taxes, the 1983 trust was used only for investing in the franchises. There is no evidence that Ferri ever intended to withdraw a substantial portion of the 1983 trust.

Powell-Ferri also claims that Ferri has a chose in action because decanting of the trust assets may have exposed him and the trust to substantial tax liability. Powell-Ferri cites numerous tax provisions but presents no evidence that Ferri or the trust has actually incurred such a liability. Furthermore, even if this court was to assume that such a liability existed, Powell-Ferri does not indicate what the amount of that liability would be. If, for example, the tax liability was equal to 49.9 percent of the decanted assets, Ferri could still think that he was better off paying those taxes than if the court granted Powell-Ferri the 50 percent that she sought. Accordingly, we conclude that the trial court did not abuse its discretion in failing to consider the value of the 2011 trust as a marital asset.

IV

Powell-Ferri also claims that the trial court incorrectly structured the award of attorney's fees in the dissolution action. Specifically, Powell-Ferri asserts that the trial court abused its discretion in fashioning

the award of attorney's fees because that award depended on the dollar amount Ferri paid to his own attorneys and ended when Ferri made his first lump sum alimony payment. Powell-Ferri asserts that the trial court's order allowed Ferri to avoid paying any of Powell-Ferri's attorney's fees by not paying his attorneys until after he had made the first lump sum alimony payment. We disagree.

The following additional facts are relevant to our resolution of this claim. The trial court found that there were "insufficient funds available for [Powell-Ferri] to pay her fees and costs related to this litigation . . . ." The trial court concluded that requiring Powell-Ferri to bear "these costs would be unduly burdensome and result in an undermining of these financial orders . . . ." Therefore, the trial court ordered Ferri to pay Powell-Ferri's attorneys an amount equal to what he paid his own attorneys. The trial court, however, limited this obligation to the amount Ferri owed his attorney at the time of trial.

We begin with the applicable standard of review. "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees . . . and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 694, 830 A.2d 193 (2003).

Powell-Ferri argues that Ferri can easily avoid paying attorney's fees because of the manner in which the trial court structured its award. She contends that, under the trial court's order, all Ferri has to do is not pay his attorneys, or at least wait to pay them until after he makes his first installment of the lump sum alimony. The claim is premised upon the fact that the obligation to pay the plaintiff's attorneys was contingent on what the defendant pays his own attorneys and ends upon the first installment of lump sum alimony. Powell-Ferri maintains that the award defies logic because ir does not correlate to the stated objective and allows the obligor to manipulate his obligation to pay attorney's fees.

In the present case, there is no evidence in the record that Ferri has not paid his attorneys or that he will fail to do so in the future. Further, the trial court did not

abuse its discretion in determining that payment of some, but not all, of Powell-Ferri's legal costs would not undermine its other orders. Specifically, the trial court awarded Powell-Ferri significant alimony and child support, and required Ferri to pay the cost of the children's private secondary and college educations. Furthermore, the trial court credited evidence establishing that Ferri had incurred substantial expenses as a result of this litigation. Accordingly, we conclude that, in light of all of the other financial orders and the circumstances of the parties in the present case, the trial court's award of attorney's fees did not constitute an abuse of discretion.[4]

The judgment is affirmed.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of the case. The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Ferri's appeal from that judgment is the subject of our decision in *Ferri* v. *Powell-Ferri*, 326 Conn.    ,    A.3d    (2017), which we also release today.

[2] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-82 provides: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.

"(b) If the court, following a trial or hearing on the merits, enters an order

pursuant to subsection (a) of this section, or section 46b-86, and such order by its terms will terminate only upon the death of either party or the remarriage of the alimony recipient, the court shall articulate with specificity the basis for such order.

"(c) Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony."

[4] Powell-Ferri has been required to pay her own attorney's fees during the pendency of the appeal because this court granted a motion to stay. The termination of this appeal, however, does not end Ferri's obligation to pay attorney's fees pursuant to the original order. As counsel for Ferri conceded in its opposition to the motion for stay, at the conclusion of the appeal, Ferri is obligated to pay Powell-Ferri the amounts owed under the original order even if he paid those amounts to his own attorneys during the appeal. Having successfully defeated Powell-Ferri's motion to terminate stay, he would be judicially estopped from arguing that full payment to his attorneys during the appeal would end his obligation. See *Dougan* v. *Dougan*, 301 Conn. 361, 372–73, 21 A.3d 791 (2011).

——————————————