******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES TAYLOR *v.* TANYA TAYLOR
(AC 38711)

Sheldon, Prescott and Elgo, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court denying his petition for visitation with the minor child of his niece, the defendant. In his petition, the plaintiff alleged that he had a parent-like relationship with the minor child because he had lived with the minor child for approximately nine years until 2012. Since then, the minor child has resided with the defendant and has not had a relationship with the plaintiff. On appeal, the plaintiff claimed, inter alia, that the court improperly determined that he had not satisfied his burden of proving, by clear and convincing evidence, that the denial of visitation would cause real and substantial harm to the minor child. *Held* that the trial court properly denied the plaintiff's petition for visitation; that court properly concluded that irrespective of whether the plaintiff had a parent-like relationship with the minor child, he had not established that the denial of visitation would cause real and significant harm to the minor child, and that finding was not clearly erroneous in light of the evidence in the record, which included the uncontroverted testimony of the guardian ad litem that the minor child was happy, was doing well in school and did not want any contact with the plaintiff, and a 2013 report that indicated that the prospect of visitation with the plaintiff previously caused considerable anxiety for the minor child, both of which were credited by the court.

Argued April 23—officially released July 31, 2018

*Procedural History*

Petition for visitation of the defendant's minor child, brought to the Superior Court in the judicial district of New Haven, and tried to the court, *Klatt, J.*; judgment denying the petition, from which the plaintiff appealed to this court. *Affirmed.*

*Jeffrey D. Brownstein*, for the appellant (plaintiff).

*Laura N. Zullo*, guardian ad litem for the minor child.

*Opinion*

ELGO, J. The plaintiff, James Taylor, appeals from the judgment of the trial court denying his petition for visitation filed pursuant to General Statutes § 46b-59. Although the plaintiff raises multiple claims on appeal, only one merits discussion—namely, his contention that the court improperly determined that he had not satisfied his burden of proving, by clear and convincing evidence, that the denial of visitation would cause real and substantial harm to the minor child.[1] We affirm the judgment of the trial court.

The relevant facts are not disputed. In 2012, the plaintiff filed a petition for visitation with the minor child of his niece, Tanya Taylor. While that matter was pending, a family services mediation report was prepared in May, 2013 (2013 report). That report was "an issue focused evaluation" based, inter alia, on interviews with the minor child's therapist and school officials. The plaintiff subsequently withdrew that petition for visitation.

On June 3, 2015, the plaintiff commenced the present action by filing a verified petition for visitation with the minor child.[2] In that petition, the plaintiff alleged that he had a parent-like relationship with the minor child, stating: "From 2002 [when the minor child was born, he] lived with me for around [nine] years [until] January 20, 2012, when [the defendant] came to visit and never returned [the minor child]. Have not seen nor talked to him since that time. I cared for him like a son. I scheduled and brought him to his [doctor's] appointments and was [the] contact person regarding his schooling and education." With respect to the harm that would result from the denial of visitation, the plaintiff alleged that the minor child "was emotionally attached to the plaintiff and [the] denial of visitation has resulted and/or will continue to result in the child doing poorly in school and have behavior issues which will continue if custody and/or visitation is denied. The minor child has no contact whatsoever with [his] biological father and needs a father like figure in his life. Child is neglected. The plaintiff requests custody and/or visitation with the minor child. The plaintiff seeks specific but only liberal visitation with the minor child. In addition to the above, as to real and significant harm, the plaintiff alleges that the minor child is being denied proper care and attention physically, educationally, emotionally and/or morally. . . . [T]he plaintiff alleges that during [the] time periods when the minor child was living with him, the [defendant] received and continued to receive welfare checks from the state of [Connecticut]. The plaintiff seeks custody and alleges that it would be detrimental to the child's best interest if it is not granted." On July 6, 2015, the plaintiff filed an "amended verified petition/affidavit for custody/visitation," which reiterated the salient allegations of his June 3, 2015

petition. That amended petition further detailed the plaintiff's allegedly parent-like relationship with the minor child from 2002 to 2012.

On August 5, 2015, the defendant filed a motion to dismiss the petition for lack of subject matter jurisdiction, claiming that it lacked the requisite allegations of a parent-like relationship and substantial harm to the minor child pursuant to *Roth* v. *Weston*, 259 Conn. 202, 234–35, 789 A.2d 431 (2002). The court disagreed and denied that motion on August 24, 2015.

The court thereafter entered an order, with the agreement of the parties, appointing Attorney Laura Zullo as guardian ad litem for the minor child. The court then held a hearing on the merits of the plaintiff's petition on October 13, 2015. At that hearing, Zullo testified that she recently had visited the minor child at his home. The child at that time was thirteen years old and in eighth grade. As Zullo stated, "[h]e tells me he's doing well in school, he tells me his favorite subject is science. And [his home] . . . it's appropriate. You know, his bedroom was fine. He's got all his Legos. It was very appropriate. I didn't see any sort of problem there." Significantly, Zullo testified that the minor child told her that "he didn't want to have any contact" with the plaintiff. As she explained, the minor child indicated that "his life is happy, he's fine, there's no reason for him to have contact with [the plaintiff]. He remembers a time where it was Christmas Eve and [the plaintiff] wouldn't let him see his mother, and he remembers that in his mind. And he wants no contact with [the plaintiff]. That's what he told me." Zullo also testified that, on the basis of her investigation, she did not believe that the minor child would suffer any real and substantial harm if visitation with the plaintiff was denied.

When Zullo's testimony concluded, the plaintiff submitted no further documentary or testimonial evidence. The defendant offered a copy of the 2013 report, to which the plaintiff objected but was overruled by the court.[3] The court then issued its ruling from the bench, stating in relevant part: "[E]ven if the first prong of plaintiff's complaint [alleging a parent-like relationship] was met, the second prong [alleging real and substantial harm] clearly is not. . . . I've heard testimony that the child is happy, that he's healthy, and that's a present day observation of the child. There's no need to look beyond that. The guardian ad litem is an experienced attorney [who has] done this particular type of evaluation many times over the years. And clearly she noted no indication of any problems within the child. I don't see the need to look beyond that.

"Furthermore, I reviewed the [2013 report]. And I'll indicate that, quite frankly . . . I believe . . . [that] if I allowed visitation . . . it could harm the child. The [2013] report, in particular, noted an inappropriate relationship that had existed between the child and [the

plaintiff] that caused enormous levels of anxiety with the child. And, in fact, the school even noted the anxiety level was rising in the child [at] the thought of having contact with [the plaintiff]. . . . So [the plaintiff's petition] for visitation is denied." The plaintiff thereafter filed a motion for reargument and reconsideration, which the court denied.

Following the commencement of this appeal, the plaintiff filed a motion for articulation, which was denied by the trial court. The plaintiff then filed a motion for review of that ruling, which this court granted. This court then ordered the trial court to articulate "(1) whether or not it found that a parent-like relationship existed between the plaintiff and the minor child prior to January of 2012, and the factual basis therefor and (2) if the court [so found], whether it determined that the defendant's refusal to permit the child to see the plaintiff was the sole reason that there was currently no parent-like relationship." In its subsequent articulation, the court stated in relevant part that it "found that there was no current parent-child relationship between the plaintiff and the minor child. . . . There was evidence, through the testimony of [Zullo] and [the 2013 report] that the child had lived with the plaintiff for a period of time, but there had been no contact between [them] for several years. Testimony further indicated that [the] plaintiff was also estranged from his extended family. [The] plaintiff did not elicit sufficient testimony regarding the circumstances of why the minor child lived with him prior to 2012 for the court to make any factual determinations in that regard."[4]

The court then clarified that its decision to deny the plaintiff's petition was predicated on his failure to satisfy the substantial harm prong of the applicable legal standard. As the court stated: "The evidence clearly established that [the] plaintiff did not meet the second . . . factor of the *Roth* analysis, which was dispositive of his claim. . . . This court's denial of [the] plaintiff's application for visitation was based on the determination that the plaintiff did not meet the second prong of [the] *Roth* analysis. . . . [Zullo] testified that the child wanted no contact with the plaintiff, in fact was quite anxious over the possibility of being required to see him. The testimony and the [2013 report] indicated that there had been an inappropriate relationship between the plaintiff and the minor child. . . . [T]he relationship between the plaintiff and all related family members appears to be nonexistent." For that reason, the court concluded that the plaintiff had not established that the denial of visitation would cause real and substantial harm to the minor child. On appeal, the plaintiff challenges the propriety of that determination.

In *Roth* v. *Weston*, supra, 259 Conn. 234–35, our Supreme Court held that "there are two requirements

that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition. First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child." With respect to the latter prong, the court explained that "[t]he family entity is the core foundation of modern civilization. The constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude. . . . Consequently, interference is justified only when it can be demonstrated that there is a compelling need to protect the child from harm. In the absence of a threshold requirement of a finding of real and substantial harm to the child as a result of the denial of visitation, forced intervention by a third party seeking visitation is an unwarranted intrusion into family autonomy." (Citations omitted.) Id., 228–29.

Our review of the court's finding as to whether the denial of visitation will result in real and substantial harm to the minor child is governed by the clearly erroneous standard. See *DiGiovanna* v. *St. George*, 300 Conn. 59, 69, 12 A.3d 900 (2011). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017).

In the present case, the court concluded that, irrespective of whether the plaintiff had a parent-like relationship with the minor child, he had not established that the denial of visitation would cause real and significant harm to the minor child. In so doing, the court credited the uncontroverted testimony of Zullo that the child currently was happy, was doing well in school, and did not want to have "any contact" with the plaintiff. See *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002) (in case tried before court, trial judge is sole arbiter of credibility of witnesses and weight to be afforded to specific testimony). The court also credited the 2013 report, which indicated that the prospect of visitation with the plaintiff previously caused considerable anxiety for the minor child.

Connecticut law recognizes that "parents should not be faced with unjustified intrusions into their decision-making in the absence of specific allegations and proof . . . ." *Roth* v. *Weston*, supra, 259 Conn. 221. For that

reason, our law requires, as a prerequisite to such interference with parental rights, proof by clear and convincing evidence that the denial of visitation with a third party will cause the child to suffer real and substantial harm. Id., 226. In the present case, the court found that the plaintiff had not satisfied that "admittedly high" burden. Id., 229. In light of the evidence adduced at the October 13, 2015 hearing, we cannot conclude that the court's finding was clearly erroneous. The court, therefore, properly denied the plaintiff's petition for visitation.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also contends that the court abused its discretion in denying (1) his request for a continuance of the hearing on the merits of his petition and (2) his postjudgment motion for reargument and reconsideration. On our review of the record, we conclude that those claims are without merit.

[2] The petition named Tanya Taylor, the mother of the minor child, as the defendant. Although she was represented by counsel throughout the proceedings before the trial court, she has not filed a brief in this appeal. Accordingly, on December 7, 2017, this court issued an order indicating that the appeal would be heard solely on the basis of the appellant's brief, appendices and record as defined by Practice Book § 60-4.

[3] The propriety of that evidentiary ruling is not challenged in this appeal.

[4] The plaintiff filed a second motion for review with this court on February 3, 2017, claiming that the trial court had not adequately articulated whether it had found that a parent-like relationship existed with the minor child prior to January, 2012. By order dated April 26, 2017, this court granted review but denied the relief requested.